UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VINCENT A. AMBROSETTI, | |
| Plaintiff, | |
| v. | CASE NO. 3:20-CV-371-JD-MGG |
| OREGON CATHOLIC PRESS, *et al.*, | |
| Defendants. | |

**OPINION AND ORDER**

Ripe before the Court in this copyright infringement action is Defendants' Motion to Transfer to the District of Oregon filed on June 18, 2020. Defendants argue that transfer under 28 U.S.C. § 1404(a) is required as the result of a forum-selection clause in a 2017 Settlement Agreement between Plaintiff, Vincent A. Ambrosetti, and Defendant, Oregon Catholic Press ("OCP"). Alternatively, Defendants contend that the interest of justice and the convenience of the parties favors transfer consistent with 28 U.S.C. § 1404(a). For the reasons discussed below, the Court finds transfer warranted.

**I.    RELEVANT BACKGROUND**

OCP, a nonprofit religious organization based in Portland, Oregon, publishes Catholic liturgical music. OCP also represents some Catholic liturgical music composers, including Defendant Bernadette Farrell. Farrell is a resident of the United Kingdom and licenses her works exclusively to OCP. One of Farrell's compositions entitled "Christ Be Our Light" was originally published by OCP in the United States in

1993. "Christ Be Our Light" is now included in the hymnals of at least five different religious denominations.

Ambrosetti lives near Nashville, Tennessee and is the founder of International Liturgy Publications ("ILP"), another sacred music publisher for the Catholic church. A vocalist and composer himself, Ambrosetti published his own work entitled "Emmanuel" in 1980 as one of multiple works in a book titled *Singing Holy*. Ambrosetti registered the copyright of "Emmanuel" in late 2019. In the meantime, he licensed Farrell's "Christ Be Our Light" from OCP for use in various hymnals published by ILP since 2009. Farrell's "Christ Be Our Light" has been at issue in at least four copyright-related lawsuits, including this one.

OCP brought the first lawsuit against Ambrosetti in 2016 in the District of Oregon. OCP asserted a copyright infringement claim based upon allegations that Ambrosetti had not obtained licenses to publish certain songs, including "Christ Be Our Light," in a songbook and hymnal. As relevant here, Ambrosetti argued that "Christ Be Our Light" was properly licensed but did not allege that it infringed any of his own works. The case ended without any decision on the merits as the parties entered a Settlement Agreement on February 15, 2017, that was amended on June 30, 2018.

The parties' Settlement Agreement includes mutual releases and a forum-selection clause that reads:

> **Jurisdiction and Venue**. This Agreement shall be governed and interpreted under the laws of the State of Oregon without regard to any jurisdiction's conflicts-of-laws principles. Any disputes relating to or arising under this Agreement, its negotiation, or enforcement shall be brought in the Oregon Federal District Court.

[DE 9-2 at 3]. The Settlement Agreement also includes a License to Publish Copyrighted Material that authorized ILP to publish multiple works, including "Christ Be Our Light," in the Saint Augustine Hymnal Second Edition. [DE 9-2 at 5–9].

In the second lawsuit, initiated on August 27, 2019, Ambrosetti filed a complaint before this Court against OCP and Farrell alleging that they infringed Ambrosetti's copyright in "Emmanuel." *Ambrosetti v. Oregon Catholic Press,* et al., Cause No. 3:19-cv-682-JD ("the '682 Case"). More specifically, Ambrosetti alleged that in composing "Christ Be Our Light," Farrell copied "Emmanuel" and that OCP published, licensed, and distributed the infringing "Christ Be Our Light." On May 7, 2020, this Court dismissed the '682 Case because Ambrosetti had not complied with the statutory requirement that a copyright must be registered with the U.S. Copyright Office before an infringement action can be filed. ['682 Case, DE 25]. On May 8, 2020, Ambrosetti initiated the instant lawsuit based upon the same copyright infringement allegations against OCP and Farrell, but supported this time by a Certificate of Copyright Registration for "Emmanuel." [DE 1 at 4, ¶ 10].

In the meantime, OCP had filed the third lawsuit—a declaratory judgment action against Ambrosetti in the District of Oregon—on September 3, 2019. OCP's Oregon suit relates directly to the '682 Case and seeks declaratory judgment that "Christ Be Our Light" does not infringe the copyright of Ambrosetti's "Emmanuel." OCP's Oregon case remains pending. In fact, on July 8, 2020, the Oregon court denied OCP's motion to lift a stay in that case finding that the first-to-file rule applied and that the declaratory

3

judgment action there should not proceed until Ambrosetti's instant copyright infringement action before this Court is resolved. [DE 12-1].

Yet here, Defendants seek transfer of this copyright infringement case to the District of Oregon. In support, Defendants cite to the forum-selection clause in the 2017 Settlement Agreement. Defendants argue that the Settlement Agreement must be interpreted to resolve the parties' competing positions as to whether Ambrosetti released his current copyright infringement claims through the Settlement Agreement. Furthermore, Defendants contend that such interpretation of the Settlement Agreement must occur in the District of Oregon to comply with the forum-selection clause. Additionally, Defendants argue that the interests of justice and convenience of witnesses favor transfer to the Oregon court.

While Defendants' instant Motion to Transfer has been pending, this Court has issued its Rule 16(b) Scheduling Order [DE 24] and discovery has ensued. The parties reached an impasse over the provisions of a proposed confidentiality order leading to cross-motions for a protective order. [DE 29 & 30]. Ambrosetti also filed a motion to compel seeking responses from Defendants to written discovery requests for information that relates to the period prior to June 30, 2018—the date of the Addendum to the 2017 Settlement Agreement. [DE 31]. On December 30, 2020, Defendants filed a Motion to Stay Briefing on Ambrosetti's motion to compel [DE 33] pending resolution of the instant Motion to Transfer, as both implicate the 2017 Settlement Agreement and its interpretation. In that context, the Court turns to the merits of Defendants' instant Motion to Transfer.

## II.    ANALYSIS

As described above, the parties dispute whether this case should proceed before this Court or whether it should be transferred to the District of Oregon. Defendants rely primarily upon the terms of the 2017 Settlement Agreement, as amended in June 2018, to support transfer. Ambrosetti, on the other hand, contends the Settlement Agreement is irrelevant because he only alleges infringement after and not before February 16, 2017—the day after the Settlement Agreement was executed.

The parties also dispute whether the interest of justice and the convenience of witnesses favors this Court or the Oregon court. Ambrosetti maintains that Defendants' decision to file their declaratory judgment action in the District of Oregon and their efforts to secure transfer of this copyright infringement case to that court evidence improper forum manipulation and procedural fencing. Ambrosetti invokes the Oregon court's emphasis on the first-to-file rule when deferring to this Court to support his argument. By contrast, Defendants argue that the transfer analysis factors outlined in Section 1404(a) favor the District of Oregon.

### A.    Legal Standard

Pursuant to 28 U.S.C. § 1404(a), a federal district court may transfer any civil action to any other district for the convenience of the parties and witnesses and in the name of justice, if venue is proper in both courts. Therefore, the typical Section 1404(a) transfer analysis involves a balancing of private and public interests through separate inquiries into (1) proper venue in the transferor and transferee courts; (2) the convenience of parties and witnesses; and (3) the interest of justice. *Research Automation*

*Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The burden is on the movant to show that transfer is warranted. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). However, the statute allows for a "flexible and individualized" analysis of the unique issues raised in a particular civil action, which therefore places considerable discretion in the transferor court when deciding whether transfer is appropriate. *Research Automation*, 626 F.3d at 977–78 (citing *Stewart Org., Inc. v. Ricoh Corp., et al.*, 487 U.S. 22, 29 (1988)). Notably, "when the inconvenience of the alternative venues is comparable there is no basis for a change of venue[.]" *Scottsdale Ins. Co. v. PMG Indus., LLC*, No. 2:16-CV-373-RLM-PRC, 2016 WL 7228796, at *2 (N.D. Ind. Dec. 14, 2016) (citing *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003)).

The transfer calculus changes, however, when the parties enter a contract that includes a forum-selection clause reflecting their pre-suit agreement as to the most proper forum for resolution of their disputes. *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. at 63. "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (internal quotations and citations omitted). Therefore, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.*

B.     **Effect of 2017 Settlement Agreement's Forum-Selection Clause**[1]

Here, the parties do not dispute that the 2017 Settlement Agreement, as amended on June 30, 2018, includes a valid forum-selection clause for "disputes relating to or arising under [the Settlement] Agreement, its negotiation, or enforcement." [*See* DE 9-2 at 3]. What the parties do dispute, however, is whether Ambrosetti's copyright infringement claims in this case fall within the scope of Settlement Agreement at all.

From Ambrosetti's perspective, the release provision and forum-selection clauses of the Settlement Agreement cannot apply to his instant infringement claims because the lawsuit that resulted in execution of the Settlement Agreement did not involve any claims of infringement of "Emmanuel." Moreover, Ambrosetti contends that he has only alleged new instances of infringement of "Emmanuel" beginning on February 16, 2017, such that all of his copyright infringement claims accrued after the parties executed the 2017 Settlement Agreement.[2] Furthermore, Ambrosetti argues that the Settlement Agreement cannot apply to his claims against Farrell because she was not a party to that Agreement. Thus, Ambrosetti concludes that his claims are not related to and do not arise under the Settlement Agreement.

---

[1] Notably, the 2017 Settlement Agreement was not mentioned in Ambrosetti's Complaint and did not become a formal issue in this case until Defendants relied upon it in denying Ambrosetti's allegations in their Answer filed on August 21, 2020, two months after they filed their Motion to Transfer. [DE 21 at 8]. At that time, Defendants' also asserted an affirmative defense that Ambrosetti's "claims are barred, in whole or in part, by virtue of the settlement agreement . . . ." [DE 21 at 10].

[2] Indeed, "[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong [giving] rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).

Defendants analyze the effect of the Settlement Agreement on Ambrosetti's instant copyright infringement claims differently. Defendants interpret the Settlement Agreement, and its amendment, to bar any of Ambrosetti's infringement claims that accrued on or before June 30, 2018, the amendment date, rather than February 15, 2017, the original effective date of the Agreement. Additionally, Defendants contend that Farrell is protected by the Mutual Release term of the Agreement because she qualifies as an "affiliate," "partner," and a "customer" of OCP.³

Even if the applicability of the Settlement Agreement is easily discerned, this Court is not in a position to make that decision. The parties expressly agreed to bring any disputes relating to the Agreement's enforcement in the Oregon Federal District Court. [DE 9-2 at 3, ¶ 15]. Through the instant Motion to Transfer, Ambrosetti has only argued the merits of whether the Settlement Agreement applies to this case. He has not demonstrated that enforcement of the parties' valid forum-selection clause is outweighed by any exceptional circumstance. *See Atlantic Marine*, 571 U.S. at 63.

---

³ The Mutual Release term reads:
> **Mutual Release.** The parties hereto individually and on behalf of their agents, successors, heirs and assigns hereby release and forever discharge each other and each of their past, present and future parent companies, subsidiaries, affiliates (defined as "any entity that directly or indirectly controls, is controlled by, or is under common control of them"), divisions, partners. real or alleged alter egos, and each of their respective managers, shareholders, directors, officers, employees, agents, representatives, attorneys, accountants, predecessors, insurers, successors, customers, heirs and assigns (collectively, the "Releasees"), of and from any and all claims, demands, actions, causes of action, suits at law or equity, debts, sums of money, accounts, controversies, rights, damages, costs, attorneys' fees, losses, expenses, promises or liabilities whatsoever (including but not limited to antitrust claims), known, unknown, asserted or unasserted from the beginning of time to the Effective Date with the exception of those amounts owed as music royalties pursuant to the OCP-ILP licenses including those noted in paragraphs 3, 4, and 6 herein.

[DE 9-2 at 2, ¶ 2].

Therefore, the parties' forum-selection clause governs and requires the transfer of this case to the District of Oregon.

### C. Section 1404(a) Transfer Factors Analysis

Even if the parties' forum-selection clause in the Settlement Agreement did not justify transfer, the transfer analysis under 28 U.S.C. § 1404(a) does. As a preliminary matter, no party disputes that venue is proper in both the Northern District of Indiana and the District of Oregon. Therefore, only the convenience of the parties and witnesses and the interest of justice need be considered in the transfer analysis here. *See Research Automation Inc.*, 626 F.3d at 978.

#### 1. Convenience of the Parties and Witnesses

In evaluating the private interests reflected in the convenience element, courts generally consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of witnesses; and (5) the convenience of the parties. *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009). A litigant seeking a transfer of venue has the burden of showing that the transferee court is "clearly more convenient than the transferor court." *Coffey*, 796 F.2d at 220.

##### a. Plaintiff's choice of forum

Unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664. A plaintiff's choice of forum is given deference especially when it is the plaintiff's home

9

forum. *See, e.g.*, Schumacher, 665 F. Supp. 2d at 977. By contrast, less deference is typically given when the plaintiff's choice is also not a situs of material events. *See id.*

Here, Plaintiff is not domiciled in Indiana. Therefore, the Northern District of Indiana is not his home forum. Accordingly, a determination of the situs of material events is critical to determining how much deference to give to Plaintiff's choice of this forum to pursue his infringement claims. *Cf.* Dwyer Instruments, Inc. v. Wal-Mart.com USA, LLC, No. 3:17-CV-636, 2017 WL 6034434, at *2 (N.D. Ind. Dec. 6, 2017) ("analysis of the situs of material events can become intertwined with any analysis of the Plaintiff's choice of forum.").

### b.  Situs of material events

"Material events are those that give rise to the cause of action." Aldridge v. Forest River, Inc., 436 F. Supp. 2d 959, 961 (N.D. Ill. 2006) (citing Von Holdt v. Husky Injection Molding Sys., Ltd., 887 F. Supp. 185, 188–89 (N.D. Ill.1995)). This case involves claims by a composer residing in Tennessee who alleges infringement against a publisher, OCP, based in Oregon who distributed nationally a work it licenses from another composer, Farrell, who resides in the United Kingdom. While the work at issue was likely distributed in this judicial district, any potential infringement by OCP or Farrell would not have been initiated in Indiana. Moreover, Ambrosetti would have experienced any potential damages for the alleged infringement in his own location, which was not Indiana. Thus, the situs of material events favors venue in the District of Oregon.

The Oregon court's deference to this Court based on the first-to-file rule does not change that outcome. Under Ninth Circuit authority, applied by the Oregon court, a

court may depart from the first-to-file rule in circumstances involving bad faith, anticipatory suits, and forum-shopping. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). In assessing such equitable considerations, the Oregon court found that OCP's filing of its declaratory judgment action in Oregon just one week after Ambrosetti filed the '682 Case in this Court "appears to be precisely the kind of inefficient, duplicative litigation that the first-to-file rule is intended to avoid." [DE 12-1 at 7 (citing *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)]. Accordingly, the Oregon court rejected OCP's argument that litigation in Oregon was more convenient than in Indiana in favor of the Ninth Circuit's deference to the plaintiff's choice of forum. [DE 12-1 at 8 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. . . .")].

Yet Seventh Circuit precedent, which governs this Court's transfer analysis, defers generally to a plaintiff's choice of forum, but distinguishes that analysis when the forum is not the plaintiff's home forum as discussed above. *Schumacher*, 665 F. Supp. 2d at 977; *but cf. Research Automation, Inc.*, 626 F.3d at 977 (identifying the transfer analysis convenience factors without any direct mention of a plaintiff's choice of forum). Given Ambrosetti's lack of connection to this judicial district and the predominance of material events in Oregon, his choice of this forum on its own deserves less deference that it might if he were at home in this judicial district.

11

### c. Ease of Access to Sources of Proof

Neither party suggests that access to sources of proof will be easier in either judicial district. Therefore, this factor favors neither forum.

### d. Convenience of the parties

The factor regarding the convenience of the parties "involves the consideration of the parties' respective residences and their abilities to bear the expense of trial in a particular forum." *Hall v. Miller's Health Sys., Inc.*, No. 2:12-CV-151-RL-PRC, 2012 WL 4748072, at *4 (N.D. Ind. July 12, 2012). However, "[w]hen plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff." *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 665; *see also Valbruna Stainless, Inc. v. ADT Sec. Servs., Inc.*, No. 1:10-CV-00077-WCL, 2010 WL 2772324, at *5 (N.D. Ind. July 12, 2010). Defendants are undeniably located further from this Court than Ambrosetti. However, air transportation to and from South Bend, Indiana, is less frequent and likely more expensive than air travel from Nashville to Portland. Thus, the convenience of the parties favors Oregon, if only slightly.

### e. Convenience of the witnesses

"When weighing the relative convenience of witnesses, courts assign greater weight to the location of non-party witnesses because securing their testimony may require use of compulsory processes and because they are more likely to be inconvenienced by having to travel." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d

12

980, 988 (S.D. Ind. 2016). Here, Ambrosetti identifies six lay, non-party witnesses: three from this judicial district, one from Washington, and the third from Connecticut. Ambrosetti has also retained an expert witness from New York. Defendants do not identify their own witnesses but argue that testimony from Ambrosetti's lay witnesses will be unnecessary and if needed, could be secured through alternative means such as stipulations or requests for admission. Furthermore, Defendants have shown that Ambrosetti's expert witness from New York presently resides in Los Angeles while maintaining a business office in New York.

While it is premature to ascertain which witnesses will be central to this litigation, it is clear that Ambrosetti's prospective Indiana witnesses would be most inconvenienced by transferring this case to Oregon. Nevertheless, Ambrosetti has not demonstrated the centrality of those witnesses to his infringement claims. Moreover, the availability of other methods of presenting their testimony minimizes the risk of inconvenience to them as compared to the greater costs incurred by any non-Indiana witnesses traveling to South Bend.

### 2. Interest of Justice

An assessment of the interest of justice focuses on the efficient administration of the courts. *Research Automation*, 626 F.3d at 978. Factors that are relevant to this analysis include: (1) the speediness of trial in either jurisdiction; (2) each court's familiarity with the relevant law; and (3) each location's relationship to the controversy. *Id.* Neither party suggests that either the Oregon court or this Court would be likely to bring this case to trial sooner than the other. Both courts would also be equally familiar with

federal copyright law, which will govern Ambrosetti's substantive infringement claims. Arguably, the District of Oregon is more familiar with Oregon law, which would govern any interpretation of the 2017 Settlement Agreement necessary to resolve Ambrosetti's claims. [*See* DE 9-2 at 3]. Yet all courts are adept at interpreting laws from other jurisdictions such that no prejudice would arise should this Court be required to apply Oregon law in this case. On these two factors, the interest of justice favors neither forum. However, Oregon has a stronger relationship to this controversy than Indiana as already discussed. Therefore, this factor tips the scale toward the Oregon court.

### III. CONCLUSION

For the reasons stated above, under either analysis, this Court **FINDS** that the motion to transfer to District of Oregon should be granted. Accordingly, the Court **GRANTS** Defendants' Motion to Transfer. [DE 9]. The Court **ORDERS** that this case be transferred to the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1404(a). The parties' discovery-related motions [DE 29, DE 30, DE 31, & DE 33] **REMAIN** pending for consideration by the Oregon court.

**SO ORDERED** this 8th day of February 2021.

                                                    s/Michael G. Gotsch, Sr.
                                                    Michael G. Gotsch, Sr.
                                                    United States Magistrate Judge