Donald J. Schmid, *admitted pro hac vice*
schmid@donaldschmidlaw.com
Law Offices of Donald J. Schmid LLC
1251 N. Eddy Street, Suite 200
South Bend, Indiana 46617
Telephone: (574) 993-2280

Parna A. Mehrbani, OSB No. 053235
Email: parna.mehrbani@tonkon.com
Direct Dial: 503-802-2170
Stephanie J. Grant, OSB No. 154957
Email: stephanie.grant@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue, 16th Floor
Portland, OR 97204

    *Attorneys for Plaintiff Vincent A. Ambrosetti*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| VINCENT A. AMBROSETTI,<br><br>    Plaintiff,<br><br>v.<br><br>OREGON CATHOLIC PRESS AND BERNADETTE FARRELL,<br><br>    Defendants. | Case No.: 3:21-cv-00211-AC<br><br>**PLAINTIFF'S TRIAL MEMORANDUM** |

This case presents a clear instance of copyright infringement where defendant Bernadette Farrell copied substantial protected elements from plaintiff Vincent Ambrosetti's 1980 musical composition "Emmanuel" when she composed "Christ Be Our Light" in 1993. The Ninth Circuit Court of Appeals has already dealt with many of the factual and legal issues in this case, finding triable issues of fact on both access and striking similarity, and confirming the viability of Mr. Ambrosetti's claims including on substantial similarity. At trial, the evidence will demonstrate that both defendants infringed Mr. Ambrosetti's copyright through copying, publication, and continued distribution of the infringing work, even after they had express notice of the infringement.

## I. INTRODUCTION AND OVERVIEW

This is a straightforward copyright infringement case arising from Defendants' copying of Plaintiff Vincent A. Ambrosetti's sacred musical composition "Emmanuel" (1980) in the later-composed song "Christ" (1993), written by Defendant Bernadette Farrell and published, distributed, and monetized by Defendant Oregon Catholic Press ("OCP"). The evidence to be presented at trial will establish each element of copyright infringement under controlling Ninth Circuit law and will permit—indeed compel—a jury verdict in Mr. Ambrosetti's favor against both Defendants.

The Ninth Circuit has already articulated the governing legal framework in this case. As the Court of Appeals explained, to prevail on a copyright infringement claim, "[a] copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of the plaintiff's work." *Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1218 (9th Cir. 2025) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir.

2000)). See also *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The second element may be established by showing that the works in question are substantially similar in their protected elements and that the infringing party had access to the copyrighted work, or, alternatively, by proof of striking similarity alone. *Id.*

At trial, Mr. Ambrosetti will present compelling, admissible evidence of: (a) his ownership of the copyright in "Emmanuel"; (b) defendants' reasonable possibility of access to "Emmanuel" prior to the composition of "Christ Be Our Light"; (c) overwhelming extrinsic and intrinsic similarity between the two works, including expert testimony demonstrating copying of protected musical expression; and (d) Farrell's direct and OCP's direct and secondary liability for infringement through publication, distribution, and financial exploitation of the infringing work.

## II. PARTIES

Plaintiff Vincent A. Ambrosetti is an experienced composer of sacred music and the author and copyright owner of the musical composition "Emmanuel," first composed and disseminated in or about 1980.

Defendant Bernadette Farrell is a composer of sacred music and the author of "Christ Be Our Light," composed in 1993. She authorized the publication of "Christ" and has profited from its distribution and licensing from 1993 through 2026.

Defendant Oregon Catholic Press is a publisher and distributor of sacred music that published, marketed, licensed to others for a fee, and profited from "Christ Be Our Light," even after it had explicit notice and knowledge of facts giving rise to infringement.

## III. LEGAL STANDARDS FOR COPYRIGHT INFRINGEMENT

2

As the Ninth Circuit stated in this case:

> "A copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of the plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). A plaintiff [1219] may prove infringement with "circumstantial, rather than direct, evidence." *Williams*, 895 F.3d at 1119. "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Three Boys Music Corp.*, 212 F.3d at 481 (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)). Even if there is no evidence of access, a plaintiff can still prevail if he or she can show "striking similarity" between the works. *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017) (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987)). As such, a plaintiff can proceed on a copyright claim in one of two ways in the absence of direct evidence: by showing access and substantial similarity, or by showing striking similarity alone.

*Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1218-19 (9th Cir. 2025)

***Proving Copying through Access and Substantial Similarity*** Access can be proved by circumstantial evidence. "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1220-21 (9th Cir. 2025) (quoting *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009)).

"To show circumstantial evidence of 'access,' the plaintiff may generally either provide (a) evidence of a 'chain of events . . . between the plaintiff's work and defendants' access to that work' or (b) evidence that 'the plaintiff's work has been widely disseminated.'" *Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1220-21 (9th Cir. 2025) (quoting *Woodland v. Hill*, 136 F.4th 1199, 1207 (9th Cir. 2025) and *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017)).

***Substantial Similarity Tests*** In the Ninth Circuit, there is "a two-part test for substantial similarity." *Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1223 (9th Cir. 2025). "Under the extrinsic test, we 'consider[] whether two works share a similarity of ideas and expression as measured by external, objective criteria.'" *Id.* (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). "While once we limited our extrinsic analysis to discrete elements, now we consider all objective similarities, including those arising from works' overall 'selection and arrangement' of elements at the first step." *Sedlik v. Drachenberg*, No. 24-3367, 2026 LX 64931, at *34 (9th Cir. Jan. 2, 2026) (J. Johnstone, concurring) (citing *Woodland v. Hill*, 136 F.4th 1199, 1210-11 (9th Cir. 2025) (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th Cir. 2018)). "[T]he intrinsic test 'test[s] for similarity of expression from the standpoint of the ordinary reasonable observer …" *Id.* (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008) (quoting *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994)).

***Plaintiff's Objection to Intrinsic Test*** There has been very recent criticism in the Ninth Circuit of the intrinsic test. And on this basis Plaintiff Mr. Ambrosetti objects to the inclusion of the intrinsic test in this trial. Judge Wardlaw wrote last month in *Sedlik*: "I fully agree with Judge Johnstone's excellent concurrence and with his analysis of our flawed extrinsic-intrinsic test for substantial similarity. I write separately to suggest that the 'intrinsic test' for substantial similarity has fundamental flaws, and we should consider dispensing with it altogether." *Sedlik v. Drachenberg*, No. 24-3367, 2026 LX 64931, at *18 (9th Cir. Jan. 2, 2026) (J. Wardlaw, concurring). Judge Wardlaw observed that the intrinsic test was "created by our court and which the Supreme Court has never blessed." *Id.* at *19. He also observed that the intrinsic test "distort[s] copyright law. The intrinsic test's instruction to consider the 'total concept and feel of

4

the works' contradicts the Copyright Act's statement that '[i]n no case does copyright protection . . . extend to any idea [or . . .] concept.'" *Id.* at *20 (quoting 17 U.S.C. § 102(b)). Judge Wardlaw also pointed out that use of the intrinsic test in a jury trial is inconsistent with Supreme Court precedent including *Feist Publications, Inc. v. Rural Telephone Service Co*., Inc., 499 U.S. 340 (1991).

Judge Johnstone agreed that the intrinsic test should be abandoned because it does not adhere to Supreme Court precedent, the Copyright Clause in the Constitution, or the Copyright Act. He said: "I also join Judge Wardlaw's call to realign our copyright doctrine with the principles established by the Copyright Clause, the Copyright Act, and the Supreme Court's copyright case law. I write to add that our doctrine has also drifted from its own origins. A half-century ago, we developed the intrinsic test to protect a work's full expression. But over time it has lost its legal content. Now the standardless intrinsic test [*29] invites juries to reach copyright verdicts unconstrained by copyright law. In practice, its holistic protection has become an empty promise." *Sedlik v. Drachenberg*, No. 24-3367, 2026 LX 64931, at *28-29 (9th Cir. Jan. 2, 2026) (J. Johnstone, concurring).

***Striking Similarity as Alternative Proof***  As noted earlier, the Ninth Circuit in this case made clear that "Even if there is no evidence of access, a plaintiff can still prevail if he or she can show 'striking similarity' between the works." *Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1219 (9th Cir. 2025).

IV.     **WHAT THE EVIDENCE WILL SHOW AT TRIAL**

***Ambrosetti's Ownership of "Emmanuel"***  Mr. Ambrosetti was the sole author of the music and lyrics to "Emmanuel" which he composed in 1980. He owns the rights and title to the

copyright in the composition as the author/composer. "Emmanuel" was registered with the U.S. Copyright Office under number PA 2-231-246 in 2019. The defendants did not challenge Mr. Ambrosetti's ownership of a valid copyright at the summary judgment stage.

***Widespread Distribution and Performance of "Emmanuel"*** "Emmanuel" was extensively distributed and performed before Farrell composed "Christ" in 1993. The work was first published in 1980 as part of a songbook called *Singing Holy* and was presented at a National Association of Pastoral Music (NPM) convention. In 1985, Ambrosetti recorded "Emmanuel" with the National Philharmonic of London as part of *I Will Sing* which was re-released by the Daughters of St. Paul in the late 1980s. The Ninth Circuit in this case specifically noted that "Emmanuel" had been in the music library of the Archbishop of Canterbury (London) since before Farrell composed "Christ" and that the Daughters of Saint Paul had "the broadest Catholic distribution of any publishing house in the world." *Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1223 (9th Cir. 2025). Ambrosetti performed "Emmanuel" at hundreds of events in the United States during the 1980s through early 1990s, including at NPM conventions that attracted 4,000 to 5,000 attendees. *Id.*

***Evidence of Access through Sacred Music Conventions*** The Ninth Circuit found compelling evidence of access through Farrell's attendance at music conventions where "Emmanuel" was performed. Farrell attended the 1988 NPM regional convention in Buffalo and where "Emmanuel" was publicly performed in a showcase event that featured the work both in live public performance and in the distribution of written sheet music to attendees. She also attended other NPM conventions in the United States during the relevant time period where she likely was exposed to "Emmanuel" additional times. The Court noted that "These were not large

6

events: rather, a regional NPM convention at the time would have had about 1,000 attendees, while a main convention would have had about 4,000 to 5,000 attendees." *Id.* at 1221.

***The Alstott Connection*** Strong evidence shows that Owen Alstott, who was OCP's publisher and later became Farrell's husband, received copies of "Emmanuel" in 1985 and 1986. Additionally, in 1985, at the national NPM convention in Cincinnati, Ohio, Mr. Ambrosetti met in person with Owen Alstott, who was the publisher and chief executive of OCP at that time. At their meeting in 1985 in Cincinnati, Mr. Ambrosetti discussed his music with Alstott and provided Alstott with a copy of "Emmanuel" (both in a recording and in a music book entitled "I Will Sing"). Mr. Ambrosetti also later sent to Alstott at OCP in the latter part of 1986 a second written score of "Emmanuel" and a second recording of "Emmanuel," which were part of a collection of works that comprised the "Singing Holy!" collection. Alstott and Farrell were married in 1992. Alstott, himself a composer of music, discussed music with Farrell prior to 1993. And OCP, of which Alstott served as the publisher, was the sole publisher of Farrell's music -- since 1986.

***Analysis of Access Evidence - Chain of Events Theory*** The Ninth Circuit found that Mr. Ambrosetti established a genuine issue of material fact under a chain of events theory (even without use of the Alstott letters – excluded for purposes of the summary judgment analysis).[1]

---

[1] The Ninth Circuit noted the specific relevance of Alstott and testimony from him in these passages:
> In this case, there is no dispute that Alstott attended the 1985 NPM convention and that Farrell attended the 1988 NPM convention.3 At both conventions, Ambrosetti performed "Emmanuel." These were not large events: rather, a regional NPM convention at the time would have had about 1,000 attendees, while a main convention would have had about 4,000 to 5,000 attendees. Taken

7

The Court explained that "there is no dispute that Alstott attended the 1985 NPM convention and that Farrell attended the 1988 NPM convention. At both conventions, Ambrosetti performed 'Emmanuel.'" *Id.* at 1221. The Court concluded that those facts were sufficient "to demonstrate a 'reasonable' possibility that Farrell could have accessed 'Emmanuel' before composing 'Christ' rather than a 'bare' possibility that she could have done so." *Id.* The Court distinguished this case from others where only bare possibility was shown, noting that Farrell's and Alstott's admitted attendance at the NPM conventions distinguishes this case from those in which courts had determined that the plaintiffs had shown only a bare possibility of access. Importantly, "the parties actually attended, and performed at, the same small events." *Id.* at 1222.

***Widespread Dissemination Theory*** The Ninth Circuit also found sufficient evidence under a widespread dissemination theory. The Court noted that Ambrosetti, Alstott, and Farrell were all members of the same part of the same liturgical music community during the relevant period, as demonstrated by their attendance at the same niche sacred music conventions. The Court emphasized that "Ambrosetti does not need to show widespread dissemination among musicians generally, but only among members of this small scene." *Id.*

The evidence at trial will show that "Emmanuel" was distributed through multiple

---

> together, those facts are sufficient, viewing the evidence in the light most favorable to Ambrosetti, to demonstrate a "reasonable" possibility that Farrell could have accessed "Emmanuel" before composing "Christ" [**18] rather than a "bare" possibility that she could have done so.

*Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1221 (9th Cir. 2025).

Additionally, the Ninth Circuit said that "it is up to the trier of fact to determine whether to believe their [Farrell and Alstott'] stories." Id. And this: "Here, Ambrosetti, Alstott, and Farrell were all members of the same part of the same liturgical music community during the relevant period." Id. There are no valid grounds to exclude Alstott's testimony from this trial. His testimony will be important.

channels, including the Daughters of Saint Paul's worldwide Catholic distribution network, and was performed at hundreds of events. The Court concluded that, given the limited size of the relevant liturgical music scene during the applicable time period and the variety of ways in which Ambrosetti has shown that Farrell could have come across "Emmanuel," even without actual sales numbers for ILP's catalogues, Mr. Ambrosetti adduced sufficient facts to create a triable issue as to wide dissemination theory. The Court also noted that the performance and distribution of "Emmanuel" in the United States was relevant, because Farrell's publishers at OCP Owen Alstott and John Limb both lived and worked in the United States during the relevant period. *Id.* at 1222 n. 4 ("to the extent that some of Ambrosetti's evidence of widespread distribution is local to the United States, that does not snuff out his dissemination theory of access in this particular case" because Alstott and Limb were in the United States as well as Farrell before the composition of "Christ").

***Expert Testimony Demonstrating Substantial and Striking Similarity*** Expert musicological testimony will establish that "Christ Be Our Light" copied original, protected elements of "Emmanuel," including melody, contour, phrasing, harmonic structure, and overall expressive sequence. The similarities are not generic, coincidental, or dictated by liturgical convention; rather, they reflect appropriation of original musical expression. The degree of similarity is so pronounced that it independently shows copying even apart from proof of access.

Dr. Lawrence Ferrara, a preeminent musicologist and Professor of Music at New York University, provided extensive expert testimony demonstrating the substantial similarities between "Emmanuel" and "Christ." Dr. Ferrara found that 21 out of a total of 26 notes (80.7%) in the corresponding melodies in bars 1-12 of the verses in "Emmanuel" and "Christ Be Our

Light" share not just the same pitches and scale degrees, but 13 of those 21 shared pitches also have the same rhythmic durations. Dr. Ferrara has testified and will testify at trial that the similarities constituted a very significant aggregate of twenty-three (23) similarities shared in "'Emmanuel'" and "'Christ'" and that these similarities "very strongly support a claim of the copying of a significant amount of expression in 'Christ' from 'Emmanuel.'" He has emphasized and will do so again at trial that the very significant similarities shared by "'Emmanuel'" and "'Christ'" embody very significant original melodic expression.

In his first report analyzing and dissecting the two works, Dr. Ferrara opined that "the *aggregate* of melodic similarities between 'Emmanuel' and 'Christ constitutes a significant amount of expression, and provides strong objective musicological evidence of copying." Dr. Ferrara's second or "rebuttal" report described in even more detail the striking similarities between the two works. Dr. Ferrara prepared a visual example with the first 12 bars of "Emmanuel" and "Christ" side by side. The notes that matched in the two works were set out in red. This graphic show just how closely Farrell copied "Emmanuel" in her later work "Christ" and how strikingly similar the two works are. (Included in Plf's in limine mtn re bars 1 -12.)

***Ninth Circuit's Finding on Substantial Similarity*** The Ninth Circuit agreed with the district court that there is substantial evidence to show that "Christ" and "Emmanuel" are substantially similar under the extrinsic test. The Court of Appeals explained that while each item in Dr. Ferrara's list of twenty-three similarities might not be protectable, "together, their unique combination is." *Id.* at 1225. The Court emphasized that it is not appropriate separate out each piece of glass within the kaleidoscope of an overall work: rather, it is appropriate to view the work as the sum of all the relevant elements together. *Id.*

10

***Striking Similarity Analysis*** The Ninth Circuit found that there is a genuine issue of material fact as to whether "Christ" and "Emmanuel" are not just substantially similar but strikingly similar. The Court noted that Dr. Ferrara's expert reports and testimony thoroughly outline numerous similarities between the two works that continue not just for a short sequence but for several musical phrases in a row. *Id.* at 1226. Dr. Ferrara testified in deposition and is expected to testify at trial that "in his extensive experience, it 'is rare that you had a melody of this length and this substantiality and similarity between two works.'" *Id.* He stated that the overall similarities between the two works were not even remotely commonplace and that he believed there was "very strong musicological evidence of copying." *Id.*

***OCP's Role in the Infringement*** OCP published, distributed, licensed, and profited from "Christ Be Our Light" for decades through 2026. OCP had the ability and obligation to evaluate copyright risks and nevertheless continued exploitation of the infringing work. OCP is liable for direct infringement and additionally for contributory and vicarious infringement.

The evidence at trial will be that OCP was put on explicit notice of the copyright infringement – by receipt in 2019 of a "cease and desist" letter from Mr. Ambrosetti's counsel. Yet OCP continued to market, promote, distribute, license to others for fees, and profit handsomely from publication of "Christ," which publication has continued through 2026. Farrell too continued to distribute, disseminate, and perform "Christ" after 2019 when she too had been put on explicit notice of the copyright infringement. She and OCP have continued to receive thousands of dollars in royalties and licensing fees from the infringement through 2026.

***Damages.*** Plaintiff suffered actual damages as a result of the infringement of "Emmanuel." These damages include a reasonable license fee that should have paid for the use found to be an infringement of "Emmanuel" and the profits the plaintiff should have received for sales and revenues lost because of the infringement. The defendants produced records late (after discovery and as late as February 4, 2026) with respect to this issue, including the profits, fees, and monies that defendants have earned in publishing and licensing the infringing work.

Plaintiff is also entitled to statutory damages pursuant to 17 U.S.C. § 504, if he so elects prior to judgment. 17 U.S.C. § 504(c)(1) permits recovery of statutory damages of between $750 and $30,000 or for willful infringement up to $150,000. However, "in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008) (describing 17 U.S.C. § 412(2)). If the infringement that occurred after the registration of the copyright work (even if not within three months of publication) is legally significant different from the pre-registration infringement, a copyright holder can seek statutory damages if he so elects with respect to those infringements. *Wakefield v. Olen Props. Corp.*, No. SACV 21-01585-CJC(DFMx), 2023 U.S. Dist. LEXIS 38376, at *12 (C.D. Cal. Jan. 4, 2023) (copy attached). See also *L ALD Ltd. Liab. Co. v. Gray*, No. 24-CV-02195-GPC-MSB, 2025 LX 510282, at *29 (S.D. Cal. Nov. 18, 2025) ("if a portion of alleged infringements occur after the copyright's registration, that infringement can be entitled to statutory damages if there are legally significant differences between the post-registration infringement and the first act of infringement").

The defendants' infringement after the 2019 registration of "Emmanuel" was legally different from their prior infringement and thus the 2019 registration provides for statutory damages. Specifically, and among other things, defendants' infringement after the 2019 registration of "Emmanuel" was willful because the infringement occurred continued unabated after three important milestones: 1) after written notice of the infringement (through the August 2019 "cease and desist" letter/notice) had been provided to defendants; 2) after a civil complaint was filed May 8, 2020; and 3) even after plaintiff prevailed in his Ninth Circuit appeal as against defendants on August 27, 2025. The infringement after these milestones was legally different than the infringement prior to the 2019 registration/notice. *Wakefield v. Olen Props. Corp.*, No. SACV 21-01585-CJC(DFMx), 2023 U.S. Dist. LEXIS 38376, at *14 (C.D. Cal. Jan. 4, 2023) ("Plaintiff has submitted evidence that Defendants knew of the infringing Florida sculptures and nevertheless continued displaying them. Plaintiff may seek statutory damages under Section 504(c)(2)").[2]

Finally, it appears that if the jury finds liability for copyright infringement here the Court and not the jury would then decide the amount of defendants' profits to be awarded to plaintiff as damages pursuant to 17 U.S.C. § 504(b). See *Rearden, LLC v. Walt Disney Pictures*, 152 F.4th 1058, 1076 (9th Cir. 2025) ("As discussed above, see supra Section IV.A, disgorgement of

---

[2] It is true that plaintiff expressed a concession at summary judgment that statutory damages were precluded in the case because the 2019 individual registration of Emmanuel was more than 3 months after first publication. (ECF 104 at 48.) That concession was in error, and the more recently case law in *Wakefield v. Olen Props. Corp.*, No. SACV 21-01585-CJC(DFMx), 2023 U.S. Dist. LEXIS 38376, at *14 (C.D. Cal. Jan. 4, 2023), has revealed that the concession was in error. The concession was not ultimately relied upon by the district court because full summary judgment was entered by this Court; partial summary judgment on statutory damages was not entered by this Court. (See ECF 119-120.)

profits is not an issue triable of right by a jury, as there is no Seventh Amendment or statutory jury trial right").

## V. POTENTIAL DEFENSES

*Independent Creation Defense*   Defendants are expected to claim independent creation, but the evidence at trial will strongly contradict this defense. Defendants will not be able to carry their burden here. When Farrell was deposed about her compositional choices in "Christ" that were identical to those in "Emmanuel," she had no explanation and could only answer "I don't know" repeatedly. Beyond Farrell's inability to explain why she made the composition choices that copied "Emmanuel," there will be expert testimony by Dr. Ferrara that there is strong musicological evidence of copying by Farrell in this case.

*Waiver/Estoppel*   The defendants are expected to claim that somehow a 2017 settlement agreement establishes a waiver or estoppel for both of the defenses. As an initial matter, Farrell was not a party to the 2017 settlement agreement and was not aware of its existence. As for OCP, the mutual release of claims in the settlement agreement only release claims up to the effective date of the agreement, February 15, 2017. Mr. Ambrosetti's copyright infringement claims accrued as against OCP after February 15, 2017 because the copyright infringement by the OCP (and Farrell) also occurred after February 15, 2017. Plaintiff is only seeking damages for infringement conduct after May 8, 2017 (defendants concur in this damages limitation).

Mr. Ambrosetti is also not estopped based on certain licensing of "Christ," as defendants allege. Mr. Ambrosetti never licensed "Christ" at any time. Mr. Ambrosetti is not estopped from bringing this copyright claim because music publisher International Liturgy Publications

14

(ILP) licensed "Christ." ILP was obligated to license "Christ" or else it would have faced a copyright infringement action for an unlicensed use of "Christ."

***Laches*** The defendants may try to assert a laches defense, arguing that Mr. Ambrosetti waited to bring his civil claim for copyright infringement after he learned of the infringement in the latter part of 2016. But there is no laches defense in copyright infringement cases. The Supreme Court has ruled that "laches cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window." *Petrella v. MGM*, 572 U.S. 663, 667, 134 S. Ct. 1962, 1967 (2014). Mr. Ambrosetti's claim here was brought within three years of the accrual of the cause of action for copyright infringement. 17 U.S.C. § 507(b).

Dated: February 5, 2026

Respectfully submitted,

Law Offices Of Donald J. Schmid LLC

/s/ Donald J. Schmid
Donald J. Schmid, *admitted pro hac vice*
E-mail: schmid@donaldschmidlaw.com
Phone: (574) 993-2280

Parna A. Mehrbani, OSB No. 053235
Email: parna.mehrbani@tonkon.com
Direct Dial: 503-802-2170
Stephanie J. Grant, OSB No. 154957
Email: stephanie.grant@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue, 16th Floor
Portland, OR 97204

*Attorneys for Plaintiff Vincent A. Ambrosetti*