E chanMichael Willes, OSB #141806
WILLES LAW
101 SW Madison Street
Unit 8835Portland, OR 97207
Telephone: (971) 803-2995
michael@willes-law.com

Joshua L. Simmons (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
joshua.simmons@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

*Attorneys for Defendants Oregon Catholic Press
and Bernadette Farrell*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| VINCENT A. AMBROSETTI,<br><br>               Plaintiff,<br><br>   v.<br><br>OREGON CATHOLIC PRESS AND<br>BERNADETTE FARRELL<br><br>             Defendants. | Case No.: 3:21-cv-00211-IM<br><br><br>**DEFENDANTS OREGON CATHOLIC PRESS AND BERNADETTE FARRELL'S TRIAL MEMORANDUM** |

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF FACTS.................................................................................1

II.   DISCUSSION OF CONTROLLING LAW ................................................3

    A.    Copyright Infringement ..................................................................3

        1.    Ownership of a Valid Copyright .................................................3

        2.    Infringement.................................................................6

    B.    Affirmative Defenses .....................................................................10

    C.    Monetary Remedies .......................................................................12

    D.    Injunctive Relief.............................................................................15

III.  CONCLUSION ...................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ................................................................10

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000) ..................................................................4

*Ambrosetti v. Or. Cath. Press*,
151 F.4th 1211 (9th Cir. 2025) ......................................................... *passim*

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
581 F.3d 1138 (9th Cir. 2009) ..................................................................7

*Bernal v. Paradigm Talent and Literary Agency*,
788 F. Supp. 2d 1043 (C.D. Cal. 2010) ....................................................8

*Corbello v. Valli*,
974 F.3d 965 (9th Cir. 2020) ..............................................................6, 9

*Cream Recs., Inc. v. Jos. Schlitz Brewing Co.*,
754 F.2d 826 (9th Cir. 1985) ..................................................................14

*Data E. USA, Inc. v. Epyx, Inc.*,
862 F.2d 204 (9th Cir. 1988) ....................................................................9

*Day v. Advanced M & D Sales, Inc.*,
336 Or. 511 (2004) (en banc)..................................................................11

*DayBreak Game Co. LLC v. Takahashi*,
No. 25 Civ. 1489, 2025 WL 2691161 (S.D. Cal. Sept. 2025) ................11

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
528 F.3d 696 (9th Cir. 2008) ..................................................................15

*Dream Games of Az., Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009) ............................................................11, 12

*eBay, Inc. v. MercExchange, LLC.*,
547 U.S. 388 (2006)................................................................................15

*Eight Mile Style, LLC v. Spotify USA Inc.*,
745 F. Supp. 3d 632 (M. D. Tenn. 2024)................................................11

iii

*Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)................................................................................4

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011) (per curiam)..................................15

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019)........................................................4, 12

*Granite Music Corp. v. United Artists Corp.*,
    532 F.2d 718 (9th Cir. 1976) ................................................7, 8

*In re Grayson*,
    125 Fed. Appx. 784 (9th Cir. 2005).........................................12

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008) ................................................10

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ..............................................4

*Kramer v. From the Heart Prods., Inc.*,
    300 Fed. Appx. 555 (9th Cir. 2008).........................................11

*Liberty Media Holdings, LLC v. Doe*,
    No.12 Civ. 3428, 2012 WL 12886489 (C.D. Cal. Aug. 28, 2012).............10

*Lifshitz v. Walter Drake & Sons, Inc.*,
    806 F.2d 1426 (9th Cir. 1986) ..............................................6

*Nelson v. Liberty Ins. Corp.*,
    314 Or. App. 350 (Or. Ct. App. 2021) .....................................11

*Northbay Wellness Grp., Inc. v. Beyries*,
    789 F.3d 956 (9th Cir. 2015) ................................................11

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
    762 F.2d 1374 (9th Cir. 1985) ..............................................15

*Oracle Corp. v. SAP AG*,
    765 F.3d 1081 (9th Cir. 2014) ..............................................13

*Oskar Sys., LLC v. Club Speed, Inc.*,
    745 F. Supp. 2d 1155 (C.D. Cal. 2010) .................................4, 5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)...................................................12, 13, 14

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ........................................................................13

*Rearden, LLC v. Walt Disney Pictures*,
    152 F.4th 1058 (9th Cir. 2025) ....................................................................14

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ............................................................. *passim*

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ........................................................................7

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ..................................................................9, 10

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*,
    786 F.2d 1400 (9th Cir. 1986) ......................................................................12

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ..........................................................................9

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ..............................................................3, 7, 8, 9

*Traxler v. Multnomah County*,
    596 F.3d 1007 (9th Cir. 2010) ......................................................................14

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    52 F.4th 1054 (9th Cir. 2022) ........................................................................5

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    595 U.S. 178 (2022)........................................................................................4

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ......................................................................7, 8

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) ....................................................................9, 13

*Woodland v. Hill*,
    136 F.4th 1199 (9th Cir. 2025) ......................................................................7

**Statutes**

17 U.S.C. § 101..................................................................................................4

17 U.S.C. § 102..................................................................................................4

17 U.S.C. § 201..................................................................................................4

17 U.S.C. § 401 ........................................................................................................5

17 U.S.C. § 404 ........................................................................................................6

17 U.S.C. § 405 ....................................................................................................5, 6

17 U.S.C. § 406 ........................................................................................................6

17 U.S.C. § 407 ........................................................................................................4

17 U.S.C. § 408 ........................................................................................................4

17 U.S.C. § 411 ........................................................................................................5

17 U.S.C. § 504 ..................................................................................................13, 14

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................13

Fed. R. Civ. P. 37 ...................................................................................................13

Fed. R. Civ. P. 39 ...................................................................................................14

Fed. R. Civ. P. 39(c) ...............................................................................................14

**Other Authorities**

*Nimmer on Copyright* ..........................................................................................8, 9

Plaintiff cannot prove his copyright claim and, regardless, it is waived and estopped. Bernadette Farrell did not have access to his work, "Emmanuel," and she did not copy it to create "Christ, Be Our Light." The works are not strikingly similar. And the protectable elements of "Emmanuel" are not substantially similar to "Christ, Be Our Light." Defendants submit this trial memorandum in accordance with the Court's Pre-Trial Scheduling Order. *See* ECF No. 148.

## I.    STATEMENT OF FACTS

Ms. Farrell is a widely-acclaimed, London-based composer of Catholic liturgical music, whose many compositions have become staples in Christian hymnals across the world. This case concerns "Christ, Be Our Light," a song she composed in early 1993. Oregon Catholic Press is a not-for-profit organization committed to providing resources, music, and services to Catholic parishes and worshipers across the world. It is Ms. Farrell's music publisher and distributes "Christ, Be Our Light" in the United States. Mr. Farrell does not reproduce or distribute "Christ, Be Our Light" in the United States herself.

Vincent Ambrosetti is the founder of the King's Minstrels Charitable Trust a/k/a International Liturgy Publications ("ILP"). He asserts that he composed "Emmanuel," and that ILP first published it in 1980 in *Singing Holy!* "Emmanuel" also was published in 1985 in *I Will Sing*. It was published again in 1987 by the Daughters of St. Paul. Prior to 1993, Mr. Ambrosetti directed most of his music-related activity to performances at the parish and diocese level within the United States. From about 1991 to 1999, he lived a transitory life traveling and performing at parishes, dioceses, and other organizations. Mr. Ambrosetti kept no records pertaining to sales or distribution of products containing "Emmanuel" during that timeframe. The sparse financial documents Mr. Ambrosetti was able to find from the 1990s show that royalties earned from "Emmanuel" from November 1994 to October 1995 were $66.97.

Mr. Ambrosetti claims that, in 1985, he performed "Emmanuel" at a promotional event

**DEFENDANTS' TRIAL MEMORANDUM - 1**

called a "showcase" that ILP put on at the national convention held by the National Association of Pastoral Musicians in Cincinnati, Ohio. This is the *only* NPM convention at which he remembers performing "Emmanuel." He otherwise testified that it would be speculative to state the percentage of NPM conventions at which he performed "Emmanuel."

On June 14, 1991, Pauline Krystal Music and ILP filed a copyright application for the *I Will Sing* songbook. The application claimed that there had been a transfer of the copyright in the book from Mr. Ambrosetti to the co-publishers. Mr. Ambrosetti claims that he has been unable to locate any such transfer agreement and asserts that he did not assign his copyright to "Emmanuel." Mr. Ambrosetti himself did not obtain a copyright registration for "Emmanuel" until March 4, 2020, *40 years* after its first publication. Meanwhile, ILP distributed different versions of "Emmanuel" for years, many of which named ILP or other publishing companies, like Pauline Krystal Music, as the copyright holder and did not list Mr. Ambrosetti as the copyright holder. Notably, the *deposit copy* for "Emmanuel" bears no copyright notice.

As a British composer who lived her whole life in the U.K., Ms. Farrell had not heard of Mr. Ambrosetti, let alone heard or possessed sheet music for his song, when she wrote "Christ, Be Our Light." In fact, there is no evidence that "Emmanuel" was sold, played on the radio, or performed on television in the UK at that point. In 1993, Ms. Farrell did not yet own a computer and the early Internet was not widely available in the UK. And there is no evidence "Emmanuel" was widely distributed online either. Nor did Ms. Farrell encounter "Emmanuel" on her limited visits to the United States. Indeed, her first trip to the United States was not until 1987, *two years* after the only NPM conference at which Mr. Ambrosetti remembers performing "Emmanuel."

Moreover, as will be explained at trial by Defendants' expert, Judith Finell, "Emmanuel" and "Christ, Be Our Light" are different compositionally. These differences include note duration,

**DEFENDANTS' TRIAL MEMORANDUM - 2**

metrical placement, intervening pitches, lyrics, harmony, and structural details.  The shared pitch series of "Emmanuel" and "Christ, Be Our Light" are not original to either work.  They are found in combination in various works for over four centuries.

Following a legal dispute between Mr. Ambrosetti and OCP concerning IPL's publication of songs outside the scope of its license agreement with OCP—including "Christ, Be Our Light"— on February 15, 2017, Mr. Ambrosetti and OCP entered into an Agreement that included a release of all controversies and claims through its Effective Date.  Mr. Ambrosetti knew of his copyright claim against Defendants when he entered into this Agreement, because in November 2016, he received a musicological analysis from his expert witness, Dr. Lawrence Ferrara.  Mr. Ambrosetti thus believed he had a copyright claim against OCP no later than November 2016, but he did not raise it with OCP when the parties were negotiating the Agreement.

## II.    DISCUSSION OF CONTROLLING LAW

### A.    Copyright Infringement

In terms of Mr. Ambrosetti's claim, he "must prove (1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of the plaintiff's work." *Ambrosetti v. Or. Cath. Press*, 151 F.4th 1211, 1218 (9th Cir. 2025) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000)).

#### 1.    Ownership of a Valid Copyright

To prove ownership of a valid copyright, Mr. Ambrosetti needs to show that "Emmanuel" is (1) original to him; (2) fixed in a tangible medium of expression; (3) authored by him; (4) registered with the United States Copyright Office; and (5) that he adhered to required copyright formalities.  We discuss each requirement in turn below.

**Originality**.  To be original, Mr. Ambrosetti must show that "Emmanuel" (1) has a "minimal degree of creativity" and (2) was "independently created by the author (as opposed to

**DEFENDANTS' TRIAL MEMORANDUM - 3**

copied from other works)." *Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Any copyright does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102.

**Fixation**. Mr. Ambrosetti must prove fixation. 17 U.S.C. § 101 (definition of "fixed").

**Authorship**. Mr. Ambrosetti must prove that he authored "Emmanuel." *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000). Copyright ownership "may be transferred in whole or in part." 17 U.S.C. § 201(d).

**Copyright Registration Requirement**. Mr. Ambrosetti must prove that he owns a valid registration for "Emmanuel," obtained before he filed this lawsuit. *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019). A valid registration is obtained by submitting (1) an application and (2) deposit copies of the work. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022). Only "the owner of [the] copyright . . . may obtain registration of the copyright claim." 17 U.S.C. § 408(a).

To obtain a copyright registration for a published work, an applicant must submit "two complete copies of the best edition." 17 U.S.C. § 407. "The 'best edition' of a work is the edition, published in the United States at any time before the date of deposit[.]" 17 U.S.C. § 101. "The deposit must be of 'bona fide copies of the original work,' and cannot be a reconstruction of the original work." *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1161 (C.D. Cal. 2010) (quoting *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998)). Otherwise, plaintiffs "could [] circumvent[] their inability to deposit a '*bona fide* copy' of their pre-existing original work simply by depositing with the copyright office a derivative work and claiming that the defendants had infringed material carried over into the derivative work from the pre-existing

**DEFENDANTS' TRIAL MEMORANDUM - 4**

one . . . . Adopting such a rule would frustrate the purpose of copyright registration and open the door to fraud." *Id.* at 1163.

If an applicant registered a copyright with inaccurate information, the registration is invalid if the applicant had (a) knowledge of the inaccuracy of the information; and (b) the inaccurate information would have caused the Register of Copyrights to refuse the registration. 17 U.S.C. § 411(b)(1). "[P]rior to making a materiality determination, a court must assess if the registrant submitted his application with knowledge that the information was factually inaccurate and with knowledge that the application failed to comply with the governing legal requirements." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1064–65 (9th Cir. 2022) (quoting 17 U.S.C. § 411(b)(2)).

**Copyright Formalities**. Mr. Ambrosetti must show compliance with the Copyright Act's formality requirements. Before March 1, 1989, "[w]henever" a copyrighted work was "published in the United States or elsewhere by authority of the copyright owner, a notice of copyright" needed to be affixed "on publicly distributed copies from which the work can be visually perceived[.]" 17 U.S.C. § 401(a). The notice must include: (1) the symbol ©, the word "Copyright" or the abbreviation "Copr."; (2) the year of first publication of the work; and (3) the name of the owner of the copyright in the work. 17 U.S.C. § 401(b).

For copies distributed before March 1, 1989, "the omission of the copyright notice . . . from copies . . . publicly distributed by authority of the copyright owner" will "invalidate the copyright in a work." 17 U.S.C. § 405(a). The omission does not invalidate the copyright only if:

(1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or (2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or (3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization

of the public distribution of copies or phonorecords, they bear the prescribed notice.
*Id.*  "[W]here the person named in a single notice applicable to a collective work as a whole is not the owner of copyright in a separate contribution that does not bear its own notice," copyright is not forfeited solely on account of a missing name.  17 U.S.C. § 404(b); *see* 17 U.S.C. § 406(a).

If a notice omits the owner's name or the date of first publication, the work will have been considered "published without any notice." 17 U.S.C. § 406(c).  And if a notice's "year date is more than one year later than the year in which publication first occurred, the work is considered to have been published without any notice." 17 U.S.C. § 406(b).  Once an error in the work's notice is discovered, a copyright owner must "make reasonable efforts to add notice to copies distributed to the public after discovery of the omission" or else forfeit his copyright. *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1433 (9th Cir. 1986).

The evidence will show that Plaintiff's copyright registration for "Emmanuel" is invalid because Plaintiff's alleged copyright has either fallen into the public domain or has been assigned to a third party.  It also will show that Mr. Ambrosetti both failed to affix copyright notices to publicly distributed copies of his work and published copies with the wrong name and/or date.

2.    <u>Infringement</u>

To establish infringement, Mr. Ambrosetti must prove that (1) actual copying and (2) unlawful appropriation. *See Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020).

**<u>Actual Copying</u>**.  As there is no direct evidence that Ms. Farrell copied "Emannuel," Mr. Ambrosetti must prove actual copying through circumstantial evidence—that is, "that the [] works share similarities probative of copying." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018).  One way to prove actual copying circumstantially is by showing that Ms. Farrell had access to "Emannuel" before "Christ, Be Our Light" was created and that the works are probatively similar. *See Ambrosetti*, 151 F.4th at 1219.  "To prove access, a plaintiff must show a

reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Id.* at 1220–21 (cleaned up) (quoting *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009)). "In the offline world, it can be difficult to show access if the copyrighted material did not sell well." *Woodland v. Hill*, 136 F.4th 1199, 1208 (9th Cir. 2025). Access cannot be "rooted in speculation." *Id.* at 1209. Thus "in music cases the 'typically more successful route to proving access requires the plaintiff to show that its work was widely disseminated through sales of sheet music, records, and radio performances.'" *Three Boys*, 212 F.3d at 482 (citation omitted). Under a widespread dissemination theory, a plaintiff cannot, for example, "show access" when the work has sold "fewer than 1,000 copies," *Woodland*, 136 F.4th at 1208, or even fewer than "17,000 copies between 1986 and 1999," *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003). Under a chain of events theory, a plaintiff cannot establish access merely because a defendant attended an event where the plaintiff's work was visible. *See Art Attacks Ink, LLC*, 581 F.3d at 1143–44.

"The 'similarities probative of copying' element is different from 'substantially similar' under the unlawful appropriation analysis, despite their similarity in wording." *Woodland*, 136 F.4th at 1207 n.1. For probative similarity, "the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. ***But*** evidence "of similar musical phrases appearing in prior works . . . . demonstrates that the musical language was of such ordinary and common occurrence that the probability of independent, coincidental production was great." *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 720 (9th Cir. 1976).

Another way to prove actual copying is if the two works are so "strikingly similar" as to preclude "the possibility of independent creation." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853

**DEFENDANTS' TRIAL MEMORANDUM - 7**

F.3d 980, 985 (9th Cir. 2017). This is a high bar. To be "striking," similarities must appear in a unique or complex manner such that "it is ***virtually impossible*** that the two works could have been independently created." 4 *Nimmer on Copyright* § 13D.07 (emphasis added). The striking similarity inquiry is simply a more stringent version of the probative copying inquiry—"in such instances, access will be inferred from the 'striking' similarities between the works. This rule only applies, however, where the works are so unmistakably similar that, as a matter of logic, the only explanation for the similarities between the two works must be copying rather than… coincidence, independent creation, or prior common source." *Bernal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010) (citation modified). A showing of striking similarity "creates a presumption of copying, which the defendant can then attempt to rebut." *Rentmeester*, 883 F.3d at 1117.

A presumption of copying can be rebutted by "independent creation." *Three Boys Music Corp.*, 212 F.3d at 486. "Any evidence pertaining to the manner in which the defendant created his composition is logically relevant: his training, the subject matter of the art, his access to other works or to the plaintiff's composition. Evidence of similar musical phrases appearing in prior works is also logically relevant to rebut the inference of copying. Such evidence demonstrates that the musical language was of such ordinary and common occurrence that the probability of independent, coincidental production was great." *Granite Music Corp.*, 532 F.2d at 720.

The evidence at trial will show that Ms. Farrell did not have access to "Emmanuel" before she independently created "Christ, Be Our Light," nor that the works are strikingly similar.

**Unlawful Appropriation**. To demonstrate unlawful appropriation, Plaintiff must prove that "Christ, Be Our Light" and "Emmanuel" are both (1) extrinsically and (2) intrinsically similar. *Unicolors, Inc.*, 853 F.3d at 985. The "similarities between the two works must be 'substantial'

and they must involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. Thus, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Ambrosetti*, 151 F.4th at 1224 (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). "Similarity only as to unprotected aspects of a work does not result in liability for copyright infringement." *Corbello*, 974 F.3d at 974. "Both tests must be satisfied for the works to be deemed substantially similar." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

The ***extrinsic test*** considers "whether two works share a similarity of ideas and expression as measured by external, objective criteria." *Ambrosetti*, 151 F.4th at 1223 (quoting *Swirsky*, 376 F.3d at 845). This analysis "requires breaking the works down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.'" *Id.* (quoting *Swirsky*, 376 F.3d at 845) (cleaned up). "This test often requires analytical dissection of a work and expert testimony." *Id.* (quoting *Three Boys Music Corp.*, 212 F.3d at 485) (citations omitted). "If this demonstrates that all similarities in expression arise from use of common ideas, then no substantial similarity can be found." *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988). Copyright protection can extend to combinations of unprotectable elements, but "only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Ambrosetti*, 151 F.4th at 1224.

The Ninth Circuit "require[s] parties to present expert testimony in musical infringement cases." *Williams v. Gaye*, 895 F.3d 1106, 1137 (9th Cir. 2018). This is because, in "the field of popular songs, many, if not most, compositions bear some similarity to prior songs." *Skidmore*, 952 F.3d at 1069 (quoting 1 Nimmer § 2.05[B]). Copyright protection thus does not "extend to common or trite musical elements, or commonplace elements that are firmly rooted in the genre's tradition. These building blocks belong in the public domain and cannot be exclusively

**DEFENDANTS' TRIAL MEMORANDUM - 9**

appropriated by any particular author." *Id.* (quotations omitted).  Accordingly, copyright law does not protect the common building blocks of music, such as "descending chromatic scales, arpeggios or short sequences of three notes," nor the elements of a song commonly found in the genre.  *Id.* at 1070, n.10.

The ***intrinsic test*** considers the "similarity of expression" evaluated "from the standpoint of the ordinary reasonable observer, with no expert assistance."  *Ambrosetti*, 151 F.4th at 1223–24 (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008)).  This "requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'"  *Rentmeester*, 883 F.3d at 1118.

The evidence will show that any alleged similarities between "Emmanuel" and "Christ, Be Our Light" are not protectable, but consist of the basic, unprotectable building blocks of music— such as time signatures and minor scales.  "Christ, Be Our Light" is different from "Emmanuel."

### B.    Affirmative Defenses

The evidence also will show that Defendants are entitled to prevail on their affirmative defenses: (1) waiver; (2) estoppel; (3) unclean hands; and (4) ratification.

***First***, a plaintiff waives a claim or issue when he (1) relinquishes a right; (2) with knowledge of the right; and (3) with intent to relinquish the right.  *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  "The Ninth Circuit recognizes waiver as an affirmative defense against a cause of action for copyright [infringement]."  *Liberty Media Holdings, LLC v. Doe*, No.12 Civ. 3428, 2012 WL 12886489 at *3 (C.D. Cal. Aug. 28, 2012).  The evidence will show that Mr. Ambrosetti knowingly waived his right to bring this claim by signing the Agreement, waiving all "known, unknown, asserted or unasserted" controversies and disputes.

***Second***, equitable estoppel exists where (1) a plaintiff knew of the defendants' allegedly infringing conduct; (2) the plaintiff intended that the defendants rely on his conduct; (3) the

**DEFENDANTS' TRIAL MEMORANDUM -  10**

defendants were ignorant of the true facts; and (4) the defendants detrimentally relied upon the conduct. *See Kramer v. From the Heart Prods., Inc.*, 300 Fed. Appx. 555, 556–57 (9th Cir. 2008); *DayBreak Game Co. LLC v. Takahashi*, No. 25 Civ. 1489, 2025 WL 2691161 at *9–10 (S.D. Cal. Sept. 2025); *Day v. Advanced M & D Sales, Inc.*, 336 Or. 511, 518-19 (2004) (en banc). "Silence may satisfy the false-representation element" "if a party is silent when it has 'duty to speak.' [T]he duty to speak does not arise until the party against whom estoppel is urged knows or should know that the failure to speak will likely mislead the other party to act to his or her detriment." *Nelson v. Liberty Ins. Corp.*, 314 Or. App. 350, 359–60, 362 (Or. Ct. App. 2021) (citations omitted). Estoppel may also be established through the "acceptance of benefits (more commonly known as quasi-estoppel)." *Day*, 336 Or. at 523. Estoppel applies where a rightsholder allows a defendant "to keep infringing, over and over, in a way that would make no sense other than as a business strategy." *Eight Mile Style, LLC v. Spotify USA Inc.*, 745 F. Supp. 3d 632, 668 (M. D. Tenn. 2024).

The evidence will show that Mr. Ambrosetti is estopped from asserting his copyright claim. To the extent that he claims this dispute is not governed by the Agreement, the evidence will show that he concealed knowledge of the claim to continue licensing songs from Defendants—who first sought to stop Mr. Ambrosetti and his company from infringing the copyrights to Defendants' music, which included "Christ, Be Our Light." By concealing his claim, he delayed the resolution of this matter for more than three years and increased the damages he can recover should he prevail.

***Third***, unclean hands exists where (1) a plaintiff's transgression was of a serious nature, and (2) relates directly to the subject matter of the action. *See Dream Games of Az., Inc. v. PC Onsite*, 561 F.3d 983, 990 (9th Cir. 2009). "A plaintiff asking a court for equitable relief 'must come with clean hands.'" *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015). The doctrine of unclean hands thus "prevents the copyright owner from asserting

infringement and asking for damages when the infringement occurred by his dereliction of duty." *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986). "For instance, the defense has been recognized when plaintiff misused the process of the courts by falsifying a court order or evidence, or by misrepresenting the scope of his copyright to the court and opposing party." *Dream Games*, 561 F.3d at 990–91.

The evidence will show that Mr. Ambrosetti has made several transgressions, each serious, related to "Christ, Be Our Light," including by knowingly concealing his claim to accrue greater damages. Plaintiff also has misrepresented the scope of his copyright by basing his claim on altered versions of the works. And he induced the alleged infringement of his work by licensing and distributing "Christ, Be Our Light" across the nation for over a decade.

***Fourth***, Defendants will demonstrate that ratification binds Mr. Ambrosetti to his company's conduct because he (1) had knowledge of the acts in question and (2) failed to disavow those acts. *See In re Grayson*, 125 Fed. Appx. 784, 785 (9th Cir. 2005). The evidence will show that Plaintiff controls ILP; had knowledge of ILP's acts, including its decision to license "Christ, Be Our Light" for almost a decade before bringing suit; and failed to disavow those acts.

## C.    <u>Monetary Remedies</u>

The Copyright Act provides for three types of damages: (a) actual damages; (b) disgorgement of profits; and (c) statutory damages. A plaintiff may recover for only copyright claims brought within three years of the claim's accrual. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). In this case, it is uncontested that Mr. Ambrosetti cannot recover damages incurred from infringement that accrued prior to May 8, 2017 (the "Damages Period"). *See* ECF No. 103 (Pl.'s Opp. Mot. Summ. J.) at 48 (conceding claims "accrue from May 8, 2017 and thereafter"). The evidence will show that Ms. Farrell did not copy or distribute "Christ, Be Our Light" in the United States during the Damages Period, and thus Plaintiff cannot recover

damages associated with her conduct.

**Actual Damages**. Mr. Ambrosetti is not permitted to seek actual damages. As detailed in Defendants' Motion *in Limine* No. 2, Federal Rule of Civil Procedure 26(a)(1)(A)(iii) required him to provide a computation of each category of damages, as well as the documents or other evidentiary materials on which that computation is based. As he failed to do so, he is precluded from using that information at trial and, thus, seeking actual damages. Fed. R. Civ. P. 37(c)(1).

Regardless, Defendants include the law on actual damages out of an abundance of caution. "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). An award of actual damages must be "supported by the evidence" and not "only based on speculation or guesswork." *Williams*, 895 F.3d at 1128. In some cases, actual damages may be calculated as the amount the copyright infringer would have paid the copyright owner to use the copyrighted material, often called a license fee. *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087–88 (9th Cir. 2014). Actual damages may also be the "loss in the fair market value of the copyright." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004).

A plaintiff seeking to recover actual damages must prove the existence of a "causal link" between the alleged infringement and some loss of anticipated revenue. *Id*. If the relationship between the actual losses suffered and the alleged infringement of "Emmanuel" is unduly speculative, Mr. Ambrosetti is not entitled to actual damages. *See id.* at 710. Moreover, if a plaintiff does not take reasonable actions to reduce damages and might have mitigated damages had the plaintiff taken such action, actual damages may be reduced by the amount the plaintiff could have mitigated. *See Petrella*, 572 U.S. at 668.

**DEFENDANTS' TRIAL MEMORANDUM - 13**

The evidence at trial will show that Mr. Ambrosetti did not incur any actual damages because of the alleged infringement of "Emmanuel" during the Damages Period.  He has not presented any evidence that he lost profits due to the alleged infringement.  Nor has he presented evidence of a loss to the fair market value of his alleged copyright in "Emmanuel."  As he has not put forward any theory or explanation of his actual damages in this case, he can claim none.

**Disgorgement of Profits.**[1]  "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b).  Where "it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements."  *Cream Recs., Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828 (9th Cir. 1985).  "And a plaintiff's delay can always be brought to bear at the remedial stage . . . in assessing the 'profits of the infringer . . . attributable to the infringement."  *Petrella*, 572 U.S. at 667–68.

The evidence at trial will show that Mr. Ambrosetti is not entitled to disgorge any of Defendants' profits.  To the extent he can disgorge any profits, they are limited to a portion of OCP's profits associated with the specific song, "Christ, Be Our Light," and apportioned to account for the fact that only portions of "Christ, Be Our Light" are accused of infringement.

**Statutory Damages.**  It is uncontested that Plaintiff is not entitled to statutory damages.

---

[1] In *Rearden, LLC v. Walt Disney Pictures*, the Ninth Circuit held that "the Copyright Act provides no statutory jury trial right on the issue of disgorgement of profits."  152 F.4th 1058, 1077 (9th Cir. 2025).  Federal Rule of Civil Procedure 39(c), however, provides that "a trial court, sitting in equity, may nevertheless employ an advisory jury." *Traxler v. Multnomah County*, 596 F.3d 1007, 1013 (9th Cir. 2010); Fed. R. Civ. P. 39(c).

**DEFENDANTS' TRIAL MEMORANDUM - 14**

*See* ECF No. 103 (Pl.'s Opp. Mot. Summ. J.) at 48 (conceding "'Emmanuel' was not registered until December 30, 2019 thus precluding statutory damages/attorneys' fees in this action."). Section 412 of the Copyright Act prohibits statutory damages when the registration of a copyright occurred more than "1 month after the copyright owner has learned of the infringement." 17 U.S.C. § 412. Because allowing "statutory damages and attorneys' fees where an infringing act occurs before registration and then reoccurs thereafter clearly would defeat the dual incentives of § 412," it is "*the first act of infringement* in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700–701 (9th Cir. 2008) (emphasis in original).

### D. <u>Injunctive Relief</u>

To obtain a permanent injunction, Plaintiff must prove (1) that he has suffered an irreparable injury; (2) that remedies available at law are inadequate; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) (per curiam) (requiring plaintiff demonstrate irreparable harm in copyright case). A plaintiff's "long delay before seeking" a permanent "injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Mr. Ambrosetti is not entitled to an injunction here.

## III.  CONCLUSION

In view of the foregoing, Defendants intend to prove at trial that Mr. Ambrosetti cannot succeed on his copyright infringement claim and, even if he could, it is barred by their affirmative defenses and no remedies are available.

**DEFENDANTS' TRIAL MEMORANDUM -  15**

DATED:  February 5, 2026                /s/ Joshua L. Simmons
_____

Joshua L. Simmons (*pro hac vice*)
joshua.simmons@kirkland.com
Miranda D. Means (*pro hac vice*)
miranda.means@kirkland.com
Michael Willes, OSB #141806
michael@willes-law.com

*Attorneys for Defendants Oregon Catholic Press*
*and Bernadette Farrell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that foregoing document was served on all counsel of record via CM/ECF.

DATED:  February 5, 2026

/s/ Joshua L. Simmons
Joshua L. Simmons (*pro hac vice*)
joshua.simmons@kirkland.com
Miranda D. Means (*pro hac vice*)
miranda.means@kirkland.com
Michael Willes, OSB #141806
michael@willes-law.com

*Attorneys for Defendants Oregon Catholic Press and Bernadette Farrell*

**CERTIFICATE OF SERVICE -  1**