Parna A. Merhbani, OSB No. 053235
Email: parna.mehrbani@tonkon.com
Direct Dial: 503-802-2170
Stephanie J. Grant, OSB No. 154957
Email: stephanie.grant@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue, 16th Floor
Portland, OR 97204

Donald J. Schmid, *admitted pro hac vice*
schmid@donaldschmidlaw.com
Law Offices of Donald J. Schmid LLC
1251 N. Eddy Street, Suite 200
South Bend, Indiana 46617
Telephone: (574) 993-2280

*Attorneys for Plaintiff Vincent A.
Ambrosetti*

Michael Willes, OSB #141806
WILLES LAW
101 SW Madison Street
Unit 8835
Portland, OR 97207
Telephone: (971) 803-2995
michael@willes-law.com

Joshua L. Simmons (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
joshua.simmons@kirkland.com

Miranda D. Means (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7500
miranda.means@kirkland.com

*Attorneys for Defendants Oregon
Catholic Press and Bernadette Farrell*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| VINCENT A. AMBROSETTI,<br><br>Plaintiff,<br><br>v.<br><br>OREGON CATHOLIC PRESS AND BERNADETTE FARRELL<br><br>Defendants. | Case No.: 3:21-cv-00211-IM<br><br><br>**SUPPLEMENT TO JOINT PROPOSED JURY INSTRUCTIONS—CONTESTED** |

The Parties submit these supplemental proposed instructions concerning vicarious liability, contributory liability, and statutory damages to their Joint Proposed Jury Instructions—Contested. The proposed instructions submitted here were inadvertently omitted from the set submitted by the Parties on February 6, 2026. Defendants oppose the inclusion of these instructions in the final jury instructions that this Court adopts as discussed in their Motions *in Limine* Nos. 1 and 4 and herein. Plaintiff believes the instructions on vicarious liability, contributory liability and statutory damages for the reasons stated in opposition to defendants' motions in limine nos. 1 and 4, and as stated herein in the footnotes.

DATED this 19th day of February, 2026.

 *s/ Donald J. Schmid*                                        *s/ Joshua L. Simmons*

_____        _____

Parna A. Mehrbani, OSB No. 053235          Michael Willes, OSB #141806
Stephanie J. Grant, OSB No. 154957          Joshua L. Simmons
Donald J. Schmid                                         Miranda D. Means

*Attorneys for Plaintiff*                                  *Attorneys for Defendants*

# INDEX

A.    SECONDARY LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS
      AND BURDEN OF PROOF ....................................................................................4

B.    SECONDARY LIABILITY—CONTRIBUTORY INFRINGEMENT—
      ELEMENTS AND BURDEN OF PROOF ...........................................................7

C.    COPYRIGHT INFRINGEMENT—DAMAGES—STATUTORY DAMAGES' 11

D.    COPYRIGHT INFRINGEMENT—DAMAGES—INNOCENT
      INFRINGEMENT...............................................................................................17

E.    COPYRIGHT INFRINGEMENT—DAMAGES—WILLFUL INFRINGEMENT18

## A. Secondary Liability—Vicarious Infringement—Elements and Burden of Proof[1]

---

[1] **Defendants' Position:** For the reasons discussed in Defendants' Motion *in Limine* No. 4, the jury should not be instructed on vicarious infringement as Plaintiff failed to disclose a secondary liability theory. ECF No. 168. A plaintiff "may not submit evidence as to [a] theory or claim" on which he has not provided "the defendant 'fair notice' of its alleged liability." *Evervictory Electronic (B.V.I.) Co. v. Invision Indus. Inc.*, No. 10 Civ. 8165, 2012 WL 2030177, at *2 (C.D. Cal. June 4, 2012). Here, a vicarious liability theory was not pleaded in Mr. Ambrosetti's Complaint, and he did not disclose such a theory during fact or expert discovery.

Tellingly, Plaintiff argues that, even if he did not plead vicarious infringement, he was close enough. But, as the Ninth Circuit holds, a "theory of secondary liability is distinct from [a] theory of direct infringement." *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009). To prove vicarious copyright infringement, a plaintiff must prove the defendant (1) had the right and ability to supervise the infringing conduct and (2) had a direct financial interest in the infringing activity. *Perfect, 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Accordingly, if Plaintiff "had intended to assert a theory of secondary liability, [he] should have done so either in the original or an amended complaint, following the proper procedure." *Dream Games*, 561 F.3d at 995. His failure to so plead prejudices Defendants—had Defendants possessed knowledge of Plaintiff's secondary liability theories, then Defendants could have moved to dismiss or for summary judgment on those arguments. Plaintiff cannot argue that he put the Defendants on notice by asking questions during a deposition and he offers no cases that say otherwise. Plaintiff also offers no cases stating that because Defendants produced documents that might support an alternative theory, Plaintiff was under no obligation to disclose that theory.

Plaintiff's citations do not help him—he cites no cases that forgave a failure to plead a secondary liability theory. Plaintiff cites a sentence of dicta from *Skinner v. Switzer*, but that case was concerned with whether "a convicted state prisoner seeking DNA testing of a crime-scene evidence may assert that claim in a civil rights action" under § 1983. 562 U.S. 521, 524 (2011). *Skinner* was not about the *specificity* of the plaintiff's pleading but rather "the vitality of his claim in light of" recent precedent and "whether there [was] federal-court subject-matter jurisdiction" over the matter at all. *Id.* at 530. And *Sagana v. Tenorio*, too, is of no use to Plaintiff. 384 F.3d 731 (9th Cir. 2004). That case merely forgave a Plaintiff's failure to cite a "specific statute" where the "plain text" of the complaint set out all elements of the claim. *Id.* at 736–37.

In addition, this instruction is likely to confuse the jury as it does not specify the time of the direct infringement for which OCP is to be held vicariously liable. Because Plaintiff was aware of his infringement claim more than three years prior to filing this lawsuit, the only infringing activity by Ms. Farrell for which OCP could be vicariously liable is that after May 8, 2017. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671–72 (2014) ("Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work."). Plaintiff's proposed instruction incorrectly allows the jury to conclude that, even if Ms. Farrell conducted no acts of infringement during the relevant period, OCP could nevertheless be held vicarious liable. *See Subafilms, Ltd. v. MGM-Pathe Commc'n Co.*, 24 F.3d 1088 (9th Cir. 1994) ("[T]here can be no

[Plaintiff's Proposal:

**Copyright Infringement—Vicarious Infringement**

**17.20 Secondary Liability—Vicarious Infringement—Elements and Burden of Proof**

If you find that **Bernadette Farrell** infringed the plaintiff **Vincent A. Ambrosetti**'s copyright in **"Emmanuel,"** you must determine whether **defendant Oregon Catholic Press** vicariously infringed that copyright.  The plaintiff **Vincent A. Ambrosetti** has the burden of proving each of the following elements by a preponderance of the evidence:

First, the defendant **Oregon Catholic Press** directly benefitted financially from the infringing activity of **Bernadette Farrell**;

Second, the defendant **Oregon Catholic Press** had the right and ability to supervise **or** control the infringing activity of **Bernadette Farrell**; and

Third, the defendant **Oregon Catholic Press** failed to exercise that right and ability.

If you find that the plaintiff **Vincent A. Ambrosetti** has proved each of these elements, your verdict should be for the plaintiff **Vincent A. Ambrosetti** if you also find that **Bernadette Farrell** infringed plaintiff **Vincent A. Ambrosetti**'s copyright.   If, on the other hand, the

---

liability for 'authorizing' such conduct.  To hold otherwise would produce the untenable anomaly, inconsistent with the general principles of third party liability, that a party could be held liable as an infringer for violating the 'authorization' right when the party that it authorized could not be considered an infringer under the Copyright Act." (citations omitted)).  Plaintiff fails to grasp the importance of *Subafilms*.  If Plaintiff's theory of secondary liability turns on the direct acts of Ms. Farrell ***in 1993***, then OCP cannot be secondarily liable because Ms. Farrell could not be directly liable for that conduct.  Plaintiff's position is not the law.

plaintiff **Vincent A. Ambrosetti** has failed to prove any of these elements, your verdict should

be for the defendant **Oregon Catholic Press on this theory of secondary liability**.[2]

---

[2]  **Plaintiff's Position:**  Based on Ninth Circuit Pattern Instruction 17.20 with minor revisions.  For the reasons stated in Plaintiff's Response to defendants' in limine motion no. 4, the jury should be instructed on vicarious liability.  Defendant OCP was put on notice of the claim through the complaint and then again in discovery.  The Complaint in this case specifically alleged primary infringement by Farrell through her copying of Emmanuel when she composed Christ Be Our Light.  (ECF 1 at ¶¶ 14-15.)  The Complaint then went on to explain OCP's infringement including factual allegations underlying OCP's secondary liability.  (Id. at ¶¶ 16-20.)  Among other things, the Complaint specifically alleged that "OCP obtained the right from Farrell to sell, market, distribute, and license the infringing work 'Christ Be Our Light.'  Since then, OCP has published, licensed and otherwise distributed, and has obtained substantial revenues from, the infringing work "Christ Be Our Light." (Id. at ¶ 16.)  The Complaint further alleged that "OCP through the publication, licensing, marketing, and distribution of the infringing work 'Christ Be Our Light' has improperly and wrongfully obtained substantial revenues and profits."  (Id.)  In this way, the Complaint's allegations explained how OCP acquired the rights to control the dissemination of "Christ," and how OCP profited directly from the infringing activity.  "[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289, 1296 (2011).  The Ninth Circuit has repeatedly held that "[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004).

Further, in discovery, Plaintiff obtained agreements between OCP and Farrell and with those agreements questioned OCP witnesses about OCP's exclusive rights to control the publication, distribution, sales and licensing of CBOL.  (See, e.g, Plaintiff's Trial Exhibits 10-11; Wade Wisler deposition (designated), 16:16-22 ("Oregon Catholic Press had the right to control the publication, distribution, sales and licensing of Christ, Be Our Light" since 2000"); Leanna Boyd deposition testimony (designated), 13:22 – 14:3 and 18:5-24 (OCP had the exclusive rights to publish, license, sell CBOL).  Further, plaintiff established in discovery that OCP was informed of the infringement by CBOL and continued to distribute, perform, and distribute CBOL – when it had the right to stop further publication of CBOL.  (*See, e.g.*, Wade Wisler deposition (designated), 34:2-21.)  In summary, OCP has long had notice of Plaintiff's claims against it for vicarious and contributory infringement through both the complaint's allegations and through the course of discovery in this case.

There is no risk of jury confusion with this proposed instruction that does not delineate specific dates of the direct infringement.   The first line of the proposed instruction requires the jury to first "find that Bernadette Farrell infringed the plaintiff Vincent A. Ambrosetti's copyright in 'Emmanuel'" *before* the

## B. Secondary Liability—Contributory Infringement—Elements and Burden of Proof[3]

juryt can consider whether OCP should be held liable for vicarious infringement. *Subafilms, Ltd. v. Mgm-Pathe Communs*. Co., 24 F.3d 1088, 1093 (9th Cir. 1994), to the extent it is relevant at all, stand for the non-controversial position – built into this proposed instruction already – that "direct infringement is a prerequisite to third party liability" under vicarious or contributory liability theories. In any event, *Subafilms'* holding dealt with an entirely different fact pattern than the instant case. It dealt with a situation where by law there could be no direct infringement because the alleged infringement was extraterritorial: "We hold that the mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act." *Id*. at 1099.

[3]     **Defendants' Position:**  For the reasons discussed in Defendants' Motion *in Limine* No. 4, the jury should not be instructed on contributory infringement as Plaintiff failed to disclose a secondary liability theory. ECF No. 168. A plaintiff "may not submit evidence as to [a] theory or claim" on which he has not provided "the defendant 'fair notice' of its alleged liability." *Evervictory Electronic (B.V.I.) Co. v. Invision Indus. Inc.*, No. 10 Civ. 8165, 2012 WL 2030177, at *2 (C.D. Cal. June 4, 2012). Here, a contributory liability theory was not pleaded in Mr. Ambrosetti's Complaint, and he did not disclose such a theory during fact or expert discovery.

Tellingly, Plaintiff next argues that, even if he did not precisely plead contributory infringement, he was close enough. But, as the Ninth Circuit holds, a "theory of secondary liability is distinct from [a] theory of direct infringement." *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009). To prove contributory copyright infringement, a plaintiff must demonstrate the defendant (1) had knowledge of a third-party's infringing activity and (2) induces, causes or materially contributes to that conduct. *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Accordingly, if Plaintiff "had intended to assert a theory of secondary liability, [he] should have done so either in the original or an amended complaint, following the proper procedure." *Dream Games*, 561 F.3d at 995. His failure to so plead prejudices Defendants—had Defendants possessed knowledge of Plaintiff's secondary liability theories, then Defendants could have moved to dismiss or for summary judgment on those arguments. Plaintiff cannot argue that he put the Defendants on notice by asking questions during a deposition and he offers no cases that say otherwise. Plaintiff also offers no cases stating that because Defendants produced documents that might support an alternative theory, Plaintiff was under no obligation to disclose that theory.

Plaintiff's citations do not help him—he cites no cases that forgave a failure to plead a secondary liability theory. Plaintiff cites a sentence of dicta from *Skinner v. Switzer*, but that case was concerned with whether "a convicted state prisoner seeking DNA testing of a crime-scene evidence may assert that claim in a civil rights action" under § 1983. 562 U.S. 521, 524 (2011). *Skinner* was not about the *specificity* of the plaintiff's pleading but rather "the vitality of his claim in light of" recent precedent and "whether there [was] federal-court subject-matter jurisdiction" over the matter at all. *Id*. at 530. And *Sagana v. Tenorio*, too, is of no use to Plaintiff. 384 F.3d 731 (9th Cir. 2004). That case merely forgave a Plaintiff's failure to cite a "specific statute" where the "plain text" of the complaint set out all elements of the claim. *Id*. at 736–37.

[Plaintiff's Proposal:[4]

---

In addition, this instruction is likely to confuse the jury as it does not specify the time of the direct infringement for which OCP is to be held contributorily liable. Because Plaintiff was aware of his infringement claim more than three years prior to filing this lawsuit, the only infringing activity by Ms. Farrell for which OCP could be contributorily liable is that after May 8, 2017. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671–72 (2014) ("Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work."). Plaintiff's proposed instruction incorrectly allows the jury to conclude that, even if Ms. Farrell conducted no direct acts of infringement during the relevant period, OCP could nevertheless be held contributorily liable. *See Subafilms, Ltd. v. MGM-Pathe Commc'n Co.*, 24 F.3d 1088 (9th Cir. 1994) ("[T]here can be no liability for 'authorizing' such conduct. To hold otherwise would produce the untenable anomaly, inconsistent with the general principles of third party liability, that a party could be held liable as an infringer for violating the 'authorization' right when the party that it authorized could not be considered an infringer under the Copyright Act." (citations omitted)). Plaintiff fails to grasp the importance of *Subafilms*. *Id.* If Plaintiff's theory of secondary liability turns on the direct acts of Ms. Farrell *in 1993*, then OCP cannot be secondarily liable because Ms. Farrell could not be directly liable for that conduct. Plaintiff's position is not the law.

[4] Plaintiff's Position: Based on Ninth Circuit Pattern Instruction 17.21 with minor revisions. ; see also *Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*, 710 F.3d 1068, 1071 (9th Cir. 2013); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement").

For the reasons stated in Plaintiff's Response to defendants' in limine motion no. 4, the jury should be instructed on contributory liability. Defendant OCP was put on notice of the claim through the complaint and then again in discovery. The Complaint in this case specifically alleged primary infringement by Farrell through her copying of Emmanuel when she composed Christ Be Our Light. (ECF 1 at ¶¶ 14-15.) The Complaint then went on to explain OCP's infringement including factual allegations underlying OCP's secondary liability. (Id. at ¶¶ 16-20.) Among other things, the Complaint specifically alleged that "OCP obtained the right from Farrell to sell, market, distribute, and license the infringing work 'Christ Be Our Light.' Since then, OCP has published, licensed and otherwise distributed, and has obtained substantial revenues from, the infringing work "Christ Be Our Light." (Id. at ¶ 16.) The Complaint further alleged that "OCP through the publication, licensing, marketing, and distribution of the infringing work 'Christ Be Our Light' has improperly and wrongfully obtained substantial revenues and profits." (Id.) In this way, the Complaint's allegations explained how OCP knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity. "[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289, 1296 (2011). The Ninth Circuit has repeatedly held that "[a] party need not

**Copyright Infringement—Contributory Infringement**

**17.21 Secondary Liability—Contributory Infringement—Elements and Burden of Proof**

**Defendant Oregon Catholic Press** may also be liable for copyright infringement engaged in by another if **it** knew or had reason to know of the infringing activity and intentionally induced **or** materially contributed to that infringing activity.

If you find that **Bernadette Farrell** infringed the plaintiff **Mr. Ambrosetti**'s copyright in **Emmanuel**, you must determine whether **Oregon Catholic Press** contributorily infringed that

---

plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004).

Further, in discovery, Plaintiff obtained agreements between OCP and Farrell and with those agreements questioned OCP witnesses about OCP's exclusive rights to control the publication, distribution, sales and licensing of CBOL.  (See, e.g, Plaintiff's Trial Exhibits 10-11; Wade Wisler deposition (designated), 16:16-22 ("Oregon Catholic Press had the right to control the publication, distribution, sales and licensing of Christ, Be Our Light" since 2000"); Leanna Boyd deposition testimony (designated), 13:22 – 14:3 and 18:5-24 (OCP had the exclusive rights to publish, license, sell CBOL).  Further, plaintiff established in discovery that OCP was informed of the infringement by CBOL and continued to distribute, perform, and distribute CBOL – when it had the right to stop further publication of CBOL.  (*See, e.g.*, Wade Wisler deposition (designated), 34:2-21.)  In summary, OCP has long had notice of Plaintiff's claims against it for vicarious and contributory infringement through both the complaint's allegations and through the course of discovery in this case.

There is no risk of jury confusion with this proposed instruction that does not delineate specific dates of the direct infringement.   The second sentence of the proposed instruction requires the jury to first "find that Bernadette Farrell infringed the plaintiff Vincent A. Ambrosetti's copyright in 'Emmanuel'" *before* the juryt can consider whether OCP should be held liable for vicarious infringement.  *Subafilms, Ltd. v. Mgm-Pathe Communs*. Co., 24 F.3d 1088, 1093 (9th Cir. 1994), to the extent it is relevant at all, stand for the non-controversial position – built into this proposed instruction already – that "direct infringement is a prerequisite to third party liability" under vicarious or contributory liability theories.  In any event, *Subafilms*' holding dealt with an entirely different fact pattern than the instant case.  It dealt with a situation where by law there could be no direct infringement because the alleged infringement was extraterritorial:  "We hold that the mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act." *Id*. at 1099.

copyright. The plaintiff **Mr. Ambrosetti** has the burden of proving both of the following elements by a preponderance of the evidence:

First, the defendant **Oregon Catholic Press** knew or had reason to know of the infringing activity of Bernadette Farrell; and

Second, the defendant **Oregon Catholic Press** intentionally induced **or** materially contributed to **Farrell's** infringing activity.

The defendant **Oregon Catholic Press**'s intent to induce the infringing activity must be shown by clear expression of that intent or other affirmative steps taken by the defendant **Oregon Catholic Press** to encourage.

If you find that **Bernadette Farrell** infringed the plaintiff **Mr. Ambrosetti**'s copyright and you also find that the plaintiff **Mr. Ambrosetti** has proved both of these elements, your verdict should be for the plaintiff **Mr. Ambrosetti**. If, on the other hand, the plaintiff **Mr. Ambrosetti** has failed to prove either or both of these elements, your verdict should be for the defendant **Oregon Catholic Press on this theory of secondary liability**.

### C. Copyright Infringement—Damages—Statutory Damages[5, 6]

---

[5]    **Plaintiff's Position:**  The plaintiff has the right to make an election before final judgment to recover statutory damages instead of actual damages and the defendant's profits. 17 U.S.C. § 504(c)(1).  The plaintiff also has the right to a jury trial issue on these issues.  *Feltner v. Columbia Pictures Tv*, 523 U.S. 340, 355, 118 S. Ct. 1279, 1288 (1998) ("we hold that the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself").

The registration of Emmanuel in 2019 does not preclude statutory damages in this case.  "[I]in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work."  *Derek Andrew, Inc. v. Poof Apparel Corp*., 528 F.3d 696, 699 (9th Cir. 2008) (describing 17 U.S.C. § 412(2)).  If the infringement that occurred after the registration of the copyright work (even if not within three months of publication) is legally significant different from the pre-registration infringement, a copyright holder can seek statutory damages if he so elects with respect to those infringements. *Wakefield v. Olen Props. Corp*., No. SACV 21-01585-CJC(DFMx), 2023 U.S. Dist. LEXIS 38376, at *12 (C.D. Cal. Jan. 4, 2023) (copy attached).   See also *L ALD Ltd. Liab. Co. v. Gray*, No. 24-CV-02195-GPC-MSB, 2025 LX 510282, at *29 (S.D. Cal. Nov. 18, 2025) ("if a portion of alleged infringements occur after the copyright's registration, that infringement can be entitled to statutory damages if there are legally significant differences between the post-registration infringement and the first act of infringement").

The defendants' infringement after the 2019 registration of "Emmanuel" was legally different from their prior infringement and thus the 2019 registration provides for statutory damages.  Specifically, and among other things, defendants' infringement after the 2019 registration of "Emmanuel" was willful because the infringement occurred continued unabated after three important milestones: 1) after written notice of the infringement (through the August 2019 "cease and desist" letter/notice) had been provided to defendants; 2) after a civil complaint was filed May 8, 2020; and 3) even after plaintiff prevailed in his Ninth Circuit appeal as against defendants on August 27, 2025.  The infringement after these milestones was legally different than the infringement prior to the 2019 registration/notice.  *Wakefield v. Olen Props. Corp.,* No. SACV 21-01585-CJC(DFMx), 2023 U.S. Dist. LEXIS 38376, at *14 (C.D. Cal. Jan. 4, 2023) ("Plaintiff has submitted evidence that Defendants knew of the infringing Florida sculptures and nevertheless continued displaying them. Plaintiff may seek statutory damages under Section 504(c)(2)").  The presence of an actual prior judgment is not required to make the defendants' post-registration willful – and legally different from their pre-registration infringement.

[6]    **Defendants' Position:**  Defendants object to the inclusion of this instruction because, as explained in Defendants' Motion *in Limine* No. 1, this Court already has determined that Plaintiff "did not register 'Emmanuel' soon enough to entitle him to statutory damages and attorneys' fees." ECF No. 112 (R&R) at 43–44, *adopted,* ECF No. 113 (Ord.).  Plaintiff, in fact, **conceded** that he was not seeking statutory damages during summary judgment briefing, ECF No. 103 (Pl.'s Opp.) at 48, and the Court expressly accepted his position on the subject when it found in Defendants' favor on summary judgment. ECF No. 112 (R&R) at 43–44, *adopted* ECF No. 119 (Ord.).  Plaintiff did not appeal this portion of the decision to the Ninth Circuit and, thus, waived the issue—it is now the "law of the

case." *See DW Aina Le'a Dev., LLC v. Land Use Comm'n*, 716 F. Supp. 3d 961, 978 (D. Haw. 2024) (citation omitted).  As the Ninth Circuit has held, "judicial estoppel [applies] to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citing *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London,* 139 F.3d 1234, 1239 (9th Cir. 1998); *Masayesva v. Hale,* 118 F.3d 1371, 1382 (9th Cir.1997)).  Accordingly, Plaintiff is not entitled to statutory damages and this instruction should not be offered.

In addition to Plaintiff's judicial estoppel preventing him from seeking statutory damages, the Court was right to find that Plaintiff is not entitled to statutory damages.  There is no dispute that Plaintiff is not entitled to statutory damages before he registered his copyright, but he argues that he is entitled to them afterward because the nature of Defendants' infringement changed.  That is wrong.  In *Derek Andrew, Inc. v. Poof Apparel Corp.*, the Ninth Circuit held that infringement "commences" for purposes of Section 412 when the first act in a series of on-going infringement occurs and that Section 412 "leaves no room for discretion."  528 F.3d 696, 699–700 (9th Cir. 2008).  District courts have again and again rejected the theory that willfulness is relevant to the Section 412 inquiry.  *See, e.g.*, *Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16 Civ. 724, 2016 WL 4126543 at *3 (S.D.N.Y. Aug. 2, 2016) (collecting cases rejecting this theory); *L.A. Idol Fashion, Inc. v. G&S Collection*, No. 10 Civ. 5645, 2011 WL 13217119, at *3 (C.D. Cal. May 4, 2011) (willfulness is "irrelevant" to availability of statutory damages).  This is consistent with the District of Oregon's holding that "'willful copyright infringement' . . . does not constitute a separate and independent claim for relief." *Precision Automation, Inc. v. Tech. Servs., Inc.*, 628 F. Supp. 2d 1244, 1250 (D. Or. 2008).  Moreover, as explained in Defendants' Motion *in Limine* No. 1, the alleged willful infringement commenced before the work was registered—which occurred after Plaintiff's cease-and-desist letter.  Plaintiff then further claims that, by defending themselves from Plaintiff's false claims in this litigation, Defendants have commenced a new act of infringement for purposes of Section 412.  That is not the rule, and Plaintiff has no cases that say otherwise.  Nor would it make sense for Section 412 to have a categorical exclusion that could be so easily overcome.  Given that statutory damages are determined per *work*, not per *infringement*, accepting Plaintiff's argument would essentially permit him the full statutory damages recovery that the statute is intended to prevent.

Plaintiff's cases do not support him.  First*,* he points to *Wakefield v. Olen Props. Corp.*, but in that case, "Defendants' activity did not constitute one continuous, ongoing series of infringing acts" because the defendants continued displaying the works after "Plaintiff recovered his damages" and the defendants "were required to destroy the infringing copies."  No. 21 Civ. 1585, 2023 WL 2347397, at *12 (C. D. Cal. Jan. 4, 2022).  Here, however, no factfinder has ever determined that "Christ, Be Our Light" infringes "Emmanuel," so Defendants' continuous distribution of the song since 1994 is one continuous act under Section 412.  Second*,* Plaintiff cites *L ALD LLC v. Gray*, but that case also proves he is not entitled to statutory damages.  In *L Ald*, that court explained that "if a portion of alleged infringements occur after a copyright's registration, that infringement can be entitled to statutory damages if there are ***legally significant differences*** between the post-registration infringement and the first act of infringement." No. 24 Civ. 2195, 2025 WL 228016, at *29 (S.D. Cal. Nov. 18, 2025) (emphasis added).  In that case, "legally significant differences" existed because the defendant "acquired" the work after the plaintiff registered its works "and released an edited version" that included "thirty-four differences" from the pre-registration version.  Here, Plaintiff has identified

[Plaintiff's Proposal:][7]

## Copyright Infringement—Damages—Statutory Damages

## 17.35   Copyright—Damages—Statutory Damages (17 U.S.C. § 504(c))

The plaintiff **Mr. Ambrosetti** is entitled to [statutory] damages for each work infringed. In determining statutory damages, you may consider the following factors:

(1)   the revenue lost by the copyright holder as a result of the infringement;

(2)   the profits earned by the defendant [*name*] as a result of the infringement;

(3)   the need to deter future infringement;

(4)   the need to penalize the infringer;

(5)   the circumstances of the infringement; and

(6)   whether the infringement was intentional.

You may not award as statutory damages less than $750, nor more than $30,000 for each work you conclude was infringed.

However, if you find the infringement was innocent, you may award as little as $200 for each work innocently infringed.

However, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

Instruction[s] [*insert number of pertinent instruction, e.g., Instruction 17.36 (Copyright—Damages—Innocent Infringement), Instruction 17.37(Copyright— Damages—*

---

no edits or other changes to Defendants' use of "Christ, Be Our Light" that are "legally significant." *See id.*  He is not entitled to statutory damages, and this instruction should be included.

[7]   **Plaintiff's Position:**   Based on Ninth Circuit Pattern Instruction 17.35 with minor revisions. Defendant's proposal adds additional elements that are not needed and are inappropriate.

*Willful Infringement)*] will tell you [what constitutes innocent infringement] [and] [what constitutes willful infringement].▌

**[Defendants' Conditional Proposal:**[8]

**If you determine that the Defendants infringed Mr. Ambrosetti's copyright in "Emmanuel," then** the plaintiff **Mr. Ambrosetti** is entitled to statutory damages for each work infringed.  In determining statutory damages, you may consider the following factors:

**(1)    what is just or fair in this particular case, including the nature of the copyright and the circumstances of the infringement;**[9]

**(2)    Mr. Ambrosetti's conduct in asserting his claim;**[10]

(3)    the revenue lost by the copyright holder as a result of the infringement;

(4)    the profits earned by the **Defendants** as a result of the infringement;

---

[8]    **Defendants' Position:**  As discussed above, Plaintiff already conceded that he may not pursue statutory damages.  ECF No. 103 (Pl.'s Opp. Mot. Summ. J.) at 48.  If this Court nevertheless determines that Plaintiff may pursue statutory damages, then Defendants believe that the statutory damages, innocent infringement, and willful infringement instructions should be combined so that the jury better understands that the latter two instructions relate solely to this form of relief.  *See generally* Ninth Circuit Model Civil Jury Instructions 17.37–39.

Moreover, Plaintiff's proposed instruction does not include two considerations that may weigh into the jury's consideration, as well as fails to explain certain legal concepts related to willful infringement.

[9]    **Defendants' Position:** "The jury is guided by 'what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like[.]'" *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (quotation and citation omitted).

[10]    **Defendants' Position:** The "decisionmaker may consider plaintiff's conduct during litigation." *See id.*; *see also Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989) (reducing statutory damages because Plaintiff's "action was conducted in a 'vexatious,' 'oppressive,' and 'unreasonable' manner"); *Bourne Co. v. Hunter Country Club*, 772 F. Supp. 1044, 1052 (N. D. Ill. 1990) (reducing statutory damages because court was "mindful of the eight-month delay in having inquiries answered by plaintiffs' licensing agent, ASCAP, as documented by defendant").

(5)    the need to deter future infringement;

(6)    the need to penalize the infringer;

(7)    the circumstances of the infringement; and

(8)    whether the infringement was intentional.

**Ordinarily,** you may not award as damages less than $750, nor more than $30,000. However, if you find the infringement was innocent, you may award as little as $200. **Likewise**, if you find the infringement was willful, you may award as much as $150,000.[11]

An infringement is considered innocent when the Defendant**s have** proved both of the following elements by a preponderance of the evidence:

- First, the **Defendants were** not aware that **their** acts constituted infringement of the copyright; and

- Second, the **Defendants** had no reason to believe that **their** acts constituted an infringement of the copyright.[12]

An infringement is considered willful when the **Plaintiff** has proved both of the following elements by a preponderance of the evidence:

- First, the **Defendants** engaged in acts that infringed the copyright; and

- Second, the **Defendants** knew that those acts infringed the copyright, or the **Defendants** acted with reckless disregard for, or willful blindness to, the copyright

---

[11]    **Defendants' Position:** Ninth Circuit Model Civil Jury Instruction 17.37: Copyright—Damages—Statutory Damages (17 U.S.C. § 504(c)).

[12]    **Defendants' Position:** Ninth Circuit Model Civil Jury Instruction 17.38: Copyright—Damages—Innocent Infringement.

holder's rights.[13]  **You may find that the Defendants were willfully blind if you determine that they took deliberate actions to avoid confirming whether "Christ, Be Our Light" was infringing and can almost be said to have actually known the critical facts.**[14]  **You may find that the Defendants had reckless disregard if you determine that they actually knew of a substantial and unjustified risk that "Christ, Be Our Light" was infringing but ignored that risk.**[15]**]**

---

[13]  **Defendants' Position:** Ninth Circuit Model Civil Jury Instruction 17.39: Copyright—Damages—Willful Infringement; "To refute evidence of willful infringement," a defendant must "establish its good faith belief in the innocence of its conduct" and "show that it was reasonable in holding such a belief." *Chosen Figure LLC v. Kevin Frazier Prods., Inc.*, F. Supp. 3d 1232, 1252-53 (C. D. Cal. 2025) (citation and quotation omitted).

[14]  **Defendants' Position:** Under the Copyright Act, a "willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (quotation omitted).

[15]  **Defendants' Position:**  Under the Copyright Act, "a reckless defendant . . . knows of a substantial and unjustified risk of such wrongdoing." *Id.* (quotation omitted).

### D.  Copyright Infringement—Damages—Innocent Infringement[16]

[Plaintiff's Proposal:

**Copyright Infringement—Damages—Innocent Infringement**

**17.36 Copyright—Damages—Innocent Infringement (17 U.S.C. § 504(c)(2))[17]**

An infringement is considered innocent when the defendant**s have** proved both of the following elements by a preponderance of the evidence:

First, the defendants **Bernadette Farrell and Oregon Catholic Press have were** not aware that **their** acts constituted infringement of the copyright; and

Second, the defendants **Bernadette Farrell and Oregon Catholic Press have** had no reason to believe that **their** acts constituted an infringement of the copyright.]

---

[16]  **Defendants' Position:**  As discussed above, Plaintiff already conceded that he may not pursue statutory damages.  ECF No. 103 (Pl.'s Opp. Mot. Summ. J.) at 48.  If this Court nevertheless determines that Plaintiff may pursue statutory damages, then Defendants believe that the statutory damages, innocent infringement, and willful infringement instructions should be combined so that the jury better understands that the latter two instructions relate solely to this form of relief.  *See generally* Ninth Circuit Model Civil Jury Instructions 17.37–39.

[17]  **Plaintiff's Position:**  Based on Ninth Circuit Pattern Instruction 17.36 with minor revisions.  Plaintiff believes that "innocent infringement" and "willful infringement" need to be broken out into separate instructions – as set out in the Ninth Circuit Pattern Instruction.

### E.  Copyright Infringement—Damages—Willful Infringement[18]

**[Plaintiff's Proposal:**

**Copyright Infringement—Damages—Willful Infringement**

**17.37 Copyright—Damages—Willful Infringement (17 U.S.C. § 504(c)(2))[19]**

An infringement is considered willful when the plaintiff **Mr. Ambrosetti** has proved both of the following elements by a preponderance of the evidence:

First, the defendants **Bernadette Farrell or Oregon Catholic Press have** engaged in acts that infringed the copyright; and

Second, the defendant **Bernadette Farrell and Oregon Catholic Press have** knew that those acts infringed the copyright, or the defendant **Bernadette Farrell and Oregon Catholic Press have** acted with reckless disregard for, or willful blindness to, the copyright holder's rights.**]**

---

[18]  **Defendants' Position:**  As discussed above, Plaintiff already conceded that he may not pursue statutory damages.  ECF No. 103 (Pl.'s Opp. Mot. Summ. J.) at 48.  If this Court nevertheless determines that Plaintiff may pursue statutory damages, then Defendants believe that the statutory damages, innocent infringement, and willful infringement instructions should be combined so that the jury better understands that the latter two instructions relate solely to this form of relief.  *See generally* Ninth Circuit Model Civil Jury Instructions 17.37–39.

Moreover, Plaintiff's proposed instruction does not include two considerations that may weigh into the jury's consideration, as well as fails to explain certain legal concepts related to willful infringement.

[19]  **Plaintiff's Position:**   Based on Ninth Circuit Pattern Instruction 17.37 with minor revisions.

*Wakefield v. Olen Props. Corp.*, No. SACV 21-01585-

CJC(DFMx), 2023 U.S. Dist. LEXIS 38376 (C.D. Cal. Jan. 4, 2023)

 Neutral

# *Wakefield v. Olen Props. Corp.*

United States District Court for the Central District of California, Southern Division

January 4, 2023, Decided; January 4, 2023, Filed

Case No.: SACV 21-01585-CJC(DFMx)

**Reporter**
2023 U.S. Dist. LEXIS 38376 *; 2023 WL 2347397

DONALD WAKEFIELD, Plaintiff, v. OLEN PROPERTIES CORP., IGOR OLENICOFF, JOHN LIANG, and DOES 1 through 10, inclusive, Defendants.

**Prior History:** *Wakefield v. Olen Props. Corp., 2022 U.S. Dist. LEXIS 132071, 2022 WL 2101734 (C.D. Cal., Jan. 4, 2022)*

## Core Terms

settlement agreement, infringing, sculptures, summary judgment, statutory damages, rescission, copies, copyright infringement, reasonable jury, summary judgment motion, fraudulently induce, punitive damages, declaration, properties, Parties, counterclaims, damages

**Counsel:** **[*1]** For Donald Wakefield, Plaintiff: Marc N Bernstein, LEAD ATTORNEY, Business Litigation Group PC, San Francisco, CA; Gene J. Brockland, PRO HAC VICE, SmithAmundsen LLP, St Louis, MO; William J O'Brien, Newport Beach, CA.

For Olen Properties Corp., Igor Olenicoff, Defendants: Julie Ann Ault, Olen Properties Corp., General Counsel, Newport Beach, CA; Kaelee Michelle Gifford, Leslie F. Vandale, Olen Properties Corp., Newport Beach, CA; Spencer M. Sax, PRO HAC VICE, Sachs Sax Caplan PL, Boca Raton, FL.

**Judges:** CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE.

**Opinion by:** CORMAC J. CARNEY

## Opinion

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. 98] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. 106]**

### I. INTRODUCTION

In this case, Plaintiff Donald Wakefield alleges that Defendants Olen Properties Corp. ("Olen") and Igor Olenicoff ("Olenicoff") infringed his copyrights.[1] (Dkt. 1 [Complaint, hereinafter "Compl."].) Now before the Court are the parties' cross motions for summary judgment. (Dkt. 98 [Plaintiff's Motion for Partial Summary Judgment]; Dkt. 106

---

[1] A third defendant, John Liang, was dismissed. (Dkt. 68.)

Donald Schmid

2023 U.S. Dist. LEXIS 38376, *1

[Defendants' Motion for Summary Judgment, hereinafter "D. Mot."].) For the following reasons, both motions are **DENIED**.[2]

## II. BACKGROUND

This is the **[\*2]** third of four lawsuits between these parties related to a copyrighted large-scale granite sculpture called *Untitled* that Plaintiff Donald Wakefield collaborated in making with a man named Joseph Glickman in 1992.

### A. *Wakefield I* — Copies 1-7 in California

In the first lawsuit ("*Wakefield I*"), Plaintiff sued Olen and Olenicoff for copyright infringement after he found seven infringing copies of *Untitled* and other derivative sculptures on Olen's properties. (Dkt. 113-1 [Plaintiff's Response to Defendants' Statement of Undisputed Facts, hereinafter "DSUF"] ¶ 1); *Wakefield v. Olenicoff ("Wakefield I"), 2015 U.S. Dist. LEXIS 43274, 2015 WL 1460152, at \*1 (C.D. Cal. Mar. 30, 2015)*, aff'd in part, rev'd in part, *679 F. App'x 591 (9th Cir. 2017)*, cert. denied, *138 S. Ct. 211 (2017)*. The *Wakefield I* jury found in favor of Plaintiff on his copyright infringement claims and awarded him $450,000 in damages. *Id. at \*6*. After a Ninth Circuit appeal, Plaintiff recovered his damages, and Olenicoff and Olen were required to destroy the infringing copies. *Id. at \*10*.

### B. *Wakefield II* — Copy 8 in California

In September 2014, after the *Wakefield I* trial, Plaintiff discovered an eighth infringing copy in Irvine, California that Olenicoff and Olen had never disclosed. (*See* DSUF ¶ 4.) In September 2017, Plaintiff sued Olenicoff and Olen for copyright infringement based on the eighth copy (*"Wakefield* **[\*3]** *II"*). (*Id.* ¶ 3.) During *Wakefield II*, Olenicoff submitted a declaration. *Wakefield v. Olenicoff, et al.*, Case No. 8:17-cv-01147-AG-DFM, Dkt. 21-2 [Declaration of Igor M. Olenicoff, hereinafter "Olenicoff *Wakefield II* Decl."].) In the declaration, Olenicoff stated that he ordered the allegedly infringing sculptures from China, which came in "various shipments" that were "disorganized" and had "numerous complications," and that "[n]either Olen nor [Olenicoff] maintained any records of what items were received from China or the locations where the sculptures were installed." (*Id.* ¶¶ 3-4.) He further stated that neither Olen nor Olenicoff had any business records to verify the exact number or location of the allegedly infringing sculptures. (*Id.* ¶ 6.) Nevertheless, Olenicoff declared that "the Olen Parties removed all sculptures of 'Untitled' and derivative pieces from all Olen controlled properties." (*Id.* ¶ 7.) Based in part on that declaration, Plaintiff agreed to settle *Wakefield II*. (Compl. ¶ 36.)

### C. The *Wakefield II* Settlement Agreement

The purpose of the *Wakefield II* settlement agreement was "to settle and compromise all disputes and controversies existing among the Parties hereto, **[\*4]** including but not limited to any and all claims that are raised or might have been raised in [*Wakefield II*]." (Dkt. 98-28 [*Wakefield II* Settlement Agreement, hereinafter "SA"] § 1.2.) In it, Plaintiff released and discharged Olen and Olenicoff from any and all claims, rights, and "remedies of any nature whatsoever" that he might have against them, whether "known or unknown," "suspected or unsuspected," "including, but not limited to all loss, liability, damages, claims, charges, complaints, or demands and including any claims set related to the causes of action for copyright infringement as set forth in the Wakefield Actions." (*Id.* § 3.1.) With respect to the matters released under the settlement agreement, Plaintiff covenanted and represented that he would not file any complaints or lawsuits against Olen and Olenicoff. (*Id.* § 2.3.) Another paragraph confirms

---

[2] Having read and considered the papers presented by the parties, the Court finds these matters appropriate for disposition without a hearing. *See Fed. R. Civ. P. 78*; Local Rule 7-15. Accordingly, the hearing set for January 9, 2023 at 1:30 p.m. is hereby vacated and off calendar.

that Plaintiff "is, through this Agreement, releasing the Olen Parties from any and all claims he may have against them arising before the execution of this Agreement." (*Id.* § 4.1.) The parties further agreed that "the releases provided for in this Agreement extend to all claims, whether or not claimed or suspected, up to and **[*5]** including the date of execution hereof, and constitute a waiver of each and all of the provisions of *California Civil Code Section 1542*," which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release. (*Id.* § 3.3.)

The agreement also contains a clause stating that it "contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments and understandings related hereto are hereby merged herein," and that "[n]o representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto." (*Id.* § 5.5.)

Finally, the agreement contains a sentence that is crossed out, which reads: "Nothing in this Agreement shall be construed to mean that Wakefield is waiving or releasing claims to enforce this Agreement, or any relief granted in the 2012 Action." (*Id.* § 3.1.)

### D. This Case - *Wakefield III* — Copies 9 and 10 in Florida

In May 2021, Plaintiff discovered two additional allegedly infringing copies of *Untitled* that were never disclosed and that are displayed at Olen's **[*6]** Florida properties. (Compl. ¶¶ 37-39.) Based on this discovery, Plaintiff filed this case ("*Wakefield III*"), alleging again that Defendants infringed his copyright.

### E. *Wakefield IV*

After Plaintiff filed this case, Defendants filed a new case ("*Wakefield IV*") in state court, alleging that Plaintiff violated the *Wakefield II* settlement agreement by filing *Wakefield III* and seeking, among other relief, an order enforcing the covenant not to sue in the settlement agreement. (*Olen Properties Corp., et. al. v. Wakefield*, No. 8:22-cv-00928-CJC-DFM [*Wakefield IV*], Dkt. 1-2 [Complaint].) After *Wakefield IV* was removed to this Court, the Court dismissed it because Defendants' *Wakefield IV* claims are compulsory counterclaims in this case. (*Id.* Dkt. 16.) With the Court's leave, Defendants filed in this case amended answers with amended affirmative defenses and asserted counterclaims for breach of the settlement agreement, specific performance of the settlement agreement, and declaratory judgment of copyright invalidity against Plaintiff. (Dkts. 83-85.)

### III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is **[*7]** sought." *Fed. R. Civ. P. 56(a)*. Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex, 477 U.S. at 325*. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id. at 249*.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)*; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d*

*626, 630-31 (9th Cir. 1987)*. The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992)*. But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat **[*8]** summary judgment. *Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)*.

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment

Defendants argue summary judgment is appropriate on all of Plaintiff's claims because the *Wakefield II* settlement agreement bars those claims. In the alternative, Defendants argue that Plaintiff may not seek rescission of the settlement agreement, punitive damages, or statutory damages.

### 1. Whether the Settlement Agreement Bars Plaintiff's Claims

Defendants argue that "Plaintiff's claims are precluded, waived, and barred as a matter of law" under the *Wakefield II* settlement agreement. (Mot. at 5 [heading].) But the Court cannot determine at this stage whether the settlement agreement bars Plaintiff's claims because Plaintiff alleges in this case that the *Wakefield II* settlement agreement was fraudulently induced and seeks rescission of it. Indeed, a reasonable jury could decide that this is true. Olenicoff represented in *Wakefield II* that Olen and Olenicoff "removed all sculptures of 'Untitled' and derivative pieces from all Olen controlled properties." (Olenicoff *Wakefield II* Decl. ¶ 7.) A reasonable jury could determine that this statement was false, that Olenicoff and Olen both knew it was false when Olenicoff **[*9]** made it, and that Plaintiff signed the settlement agreement in reliance on Olenicoff's misrepresentation. (*See* Compl. ¶¶ 93-99.) For example, there is evidence that Olen submitted an art application to the City of Boynton Beach, Florida in 2014 with four sculptures including the allegedly infringing *Untitled* copy—evidence that Olen and Olenicoff were aware of the undestroyed allegedly infringing sculptures not too long before Olenicoff submitted his declaration in 2017.

On the other hand, a reasonable jury could also determine that the *Wakefield II* settlement agreement was not fraudulently induced. In the same declaration in which he stated that all sculptures had been removed, Olenicoff stated that neither he nor Olen maintained any records of what sculptures they received from China or where the sculptures were installed, including no records to verify the exact number or locations of *Untitled* and its derivations, and that Defendants have over six million square feet of office space with artwork and sculptures at every property, plus hundreds of pieces of artwork and sculptures at Olen headquarters. (Olenicoff *Wakefield II* Decl. ¶¶ 4-6.) Defendants further submit evidence of a draft **[*10]** settlement agreement that removed a provision in which Olen and Olenicoff represented that there were no further copies of *Untitled* in their possession and that all copies previously disclosed were destroyed. (*See* Dkt. 114 at 11.) A reasonable jury could decide Plaintiff did not justifiably rely on Defendants' representation that all copies were destroyed. Alternatively, a reasonable jury could believe that Olenicoff "was not aware or did not remember that the sculptures in Boynton Beach existed," (DSUF at ¶¶ 55-58), and "entered into the Settlement Agreement in good faith and without an intent to deceive and with the understanding that it would forever end all claims with Mr. Wakefield," (*id.* ¶¶ 32-34).

A jury will have to decide whether the settlement agreement was fraudulently induced. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claims based on the settlement agreement.[3]

---

[3] For the same reasons, Defendants are not entitled to summary judgment on their counterclaims for breach of contract and specific performance of the settlement agreement.

### 2. Rescission

Defendants argue that Plaintiff cannot obtain rescission of the settlement agreement because he "has not alleged in his Complaint that he has returned or that he has the ability to return the $110,000 settlement proceeds." (D. Mot. at 21.) But such an allegation is not essential **[*11]** to plead a claim for rescission. Indeed, the Truth in Lending Act case on which Defendants rely cites a Ninth Circuit case making clear that "whether a decree of rescission should be conditional [upon tender by the borrower of the property he had received from the lender] depends upon the equities present in a particular case." *Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003)*. That requiring return of the benefit is discretionary is confirmed by *California Civil Code Section 1693*, which states, "A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court **may** make a tender of restoration a condition of its judgment" (emphasis added). If a jury determines rescission is appropriate, the Court can determine at a later time whether to require Plaintiff to return the settlement proceeds. But Plaintiff's failure to allege that he has returned or can return the settlement proceeds does not preclude him from presenting his rescission claim to a jury.

### 3. Punitive Damages

Plaintiff **[*12]** seeks punitive damages on his claim for fraud in the inducement. (Compl. ¶ 98.) Defendants argue that Plaintiff cannot recover punitive damages because he has not presented evidence that their conduct was sufficiently egregious to warrant punitive damages. (D. Mot. at 22.) The Court disagrees. Punitive damages may be appropriate if a plaintiff establishes "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." *Cal. Civ. Code § 3294(a)*. As described above, Plaintiff has presented evidence that Defendants acted fraudulently, and that evidence is sufficient to allow Plaintiff to present his punitive damages claim to a jury.

### 4. Statutory Damages

Defendants next argue that Plaintiff may not recover statutory damages under either *17 U.S.C. § 504(c)(1)* or *(c)(2)*.

### a. Pre-Registration Conduct

*17 U.S.C. § 504(c)(1)* permits recovery of statutory damages of between $750 and $30,000 instead of actual damages and profits, "as the court considers just." However, "in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work." ***Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 699 (9th Cir. 2008)*** (describing *17 U.S.C. § 412(2)*). If post-registration infringement **[*13]** constitutes an ongoing continuation of pre-registration infringement, **statutory damages** are not available. *Id. at 701*. Post-registration infringement is a continuation of pre-registration infringement if "there is no **legally significant difference**" between pre-and post-registration infringement. *Id.*

Defendants argue that Plaintiff cannot recover statutory damages under *section 504(c)(1)* because their infringement began before Plaintiff registered his copyright. While it is true that some of Defendants' infringing sculptures existed as early as 2008, and Plaintiff did not register his copyright until 2012, Defendants' activity did not constitute one continuous, ongoing series of infringing acts. Rather, there is a "legally significant difference," *id.*, between the pre-registration infringement and the later infringement: the *Wakefield I* lawsuit, jury trial, jury verdict,

and Ninth Circuit appeal, all culminating in an award in Plaintiff's favor and an order that Defendants destroy infringing copies. Plaintiff may seek statutory damages under *Section 504(c)(1)*.

### b. Willful Conduct

*17 U.S.C. § 504(c)(2)* permits recovery of statutory damages of up to $150,000 instead of actual damages and profits in the court's discretion if the court finds that infringement **[*14]** was committed willfully. Defendants argue that Plaintiff may not seek statutory damages under this subsection because Plaintiff has not submitted evidence that Defendants acted willfully. The Court disagrees. Plaintiff has submitted evidence that Defendants knew of the infringing Florida sculptures and nevertheless continued displaying them. Plaintiff may seek statutory damages under *Section 504(c)(2)*.[4]

### B. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on his claims for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and willful copyright infringement, and also on Defendants' counterclaims for breach and specific performance of the *Wakefield II* settlement agreement. But the Court cannot decide whether Plaintiff is entitled to summary judgment on either his claims or Defendants' counterclaims because Plaintiff has not moved for summary judgment on his claim for fraud in the inducement of the settlement agreement. This is for good reason, as determining whether a fraud occurred generally turns on factual issues that must be resolved by a jury. *See Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 981 (9th Cir. 1980)* ("Fraud claims normally are so larded with fact issues (including issues **[*15]** as to intent) that summary judgment is seldom possible."); *Miller v. Fairchild Indus., Inc., 885 F.2d 498, 510 (9th Cir. 1989)*, *as amended on denial of reh'g and reh'g en banc* (Sept. 19, 1989) (explaining that fraud "is a question of fact involving determinations of intent and evaluations of credibility properly resolved by the jury").

As explained, although a reasonable jury could certainly conclude that the settlement agreement was fraudulently induced and has no application in this case, a reasonable jury could also conclude that the settlement agreement was not fraudulently induced. If the jury did so, it could also reasonably decide that the settlement agreement bars Plaintiff's claims given that the Florida statutes were displayed since 2014, and therefore a claim based on them could have been brought in *Wakefield II*. Because a jury will have to decide whether the settlement agreement was fraudulently induced, and if not, whether the settlement agreement bars Plaintiff's claims, Plaintiff is not entitled to summary judgment on his claims or on Defendants' counterclaims.

### V. CONCLUSION

For the foregoing reasons, both Plaintiff's and Defendants' motions for summary judgment are **DENIED**.

DATED: January 4, 2023

/s/ Cormac J. Carney

CORMAC J. CARNEY

UNITED **[*16]** STATES DISTRICT JUDGE

---

[4] Defendants also argue that they are entitled to summary judgment on Plaintiff's RICO claim because their conduct was not willful. For the same reasons, then, Defendants are not entitled to summary judgment on Plaintiff's RICO claim.

**End of Document**